321 F.2d 494
 Edward Alvin BELL et al., infants, etc., Appellees and Cross-Appellants,
v.
SCHOOL BOARD OF POWHATAN COUNTY, VIRGINIA, and J. S. Caldwell, Division Superintendent of Schools of Powhatan County, Virginia, Appellants and Cross-Appellees.
 No. 8944.
 United States Court of Appeals Fourth Circuit.
 Argued June 10, 1963.
 Decided June 29, 1963.
 
 S. W. Tucker, Richmond, Va. (Henry L. Marsh, III, Richmond, Va., on the brief), for appellees and cross-appellants.
 Collins Denny, Jr., Richmond, Va. (John F. Kay, Jr., and Denny, Valentine & Davenport, Richmond, Va., on the brief), for appellants and cross-appellees.
 Before SOBELOFF, Chief Judge, and HAYNSWORTH, BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges, sitting en banc.
 SOBELOFF, Chief Judge.
 
 
 1
 The School Board of Powhatan County, Virginia, maintains only two schools. One is called the Powhatan School, and is designated for white pupils and staffed exclusively by white personnel. The other, known as the Pocahontas School, is designated for Negro pupils and staffed exclusively by Negroes. Each school accommodates all of the County's high school and elementary pupils of the race which it serves. This segregation of the races has been traditional in the County and has not been altered to any degree since the decisions of the Supreme Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); Id., 349 U.S. 294. 75 S.Ct. 753, 99 L.Ed. 1083 (1955).
 
 
 2
 On August 17, 1962, 65 Negro children and their parents filed their complaint as a class action against the School Board, J. S. Caldwell, Division Superintendent of Schools, and the members of the Pupil Placement Board of the Commonwealth of Virginia. They recited that, although applications had been timely made to the defendants for the admission of the infant plaintiffs to the white school, some as high school students and others as elementary school students, no action had been taken on any of these applications. The complaint alleged that the Board's requirement for the filing of applications for transfer operated only against Negroes seeking release from the racially segregated public school pattern, for by reason of the long established policy of racial segregation in initial assignments, only Negroes had need for transfers; that if the plaintiffs had been willing to continue to attend the segregated Negro school, they would have needed to make no applications; that, but for the fact that the defendants were determined to maintain the segregated pattern of public schools, the applications made on behalf of the infant plaintiffs would have been granted; that the defendants have taken no steps to eliminate racial discrimination in the public school system and have, on the contrary, interposed obstructions to defeat the rights of the infant plaintiffs and all other Negro school children of the County to the equal protection of the laws under the Fourteenth Amendment; that in light of these facts no remedy is available to them but through the injunctive power of the court.
 
 
 3
 A regulation of the Pupil Placement Board required that "applications for original placement in or transfer to a particular specified (sic) school * * * must be filed with the local division superintendents of schools prior to June 1 immediately preceding the next ensuing school session for which such placements or transfers are desired."
 
 
 4
 On May 21, 1962, applications on the official form, seeking the transfer or initial assignment of ten of the plaintiff Negro children to Powhatan School, were left in the office of the Division Superintendent. When several other Negro parents attempted to obtain application forms from the office of the principal of the Pocahontas School, they were told that the supply of such forms had been exhausted. On at least two occasions, some of the parents attempted to obtain forms from the office of the Division Superintendent, also without success. As late as May 29, official forms were still unavailable at either office.
 
 
 5
 On May 31, 19 additional applications on official forms seeking transfers to Powhatan School were left in the office of the Division Superintendent.[1] Some parents, unable to obtain official printed forms, addressed letter applications to the local School Board and the State Pupil Placement Board requesting transfer of eight of the plaintiff children to Powhatan School. These were delivered to the office of the Division Superintendent; copies were also delivered to the office of the Pupil Placement Board in Richmond on May 31.
 
 
 6
 On June 20, 1962, the members of the School Board, the Division Superintendent and their counsel met with the Pupil Placement Board and their counsel. Objection was voiced that the papers were not complete; that they should have been executed by the principal or the local elementary school Supervisor on behalf of the local School Board. The parents of the children were not communicated with, nor was any additional information requested of them.
 
 
 7
 The Pupil Placement Board later directed the School Board and the Division Superintendent to investigate whether the applications on the prescribed form were genuine and that the papers should otherwise be completed and forwarded to the Pupil Placement Board but the School Board publicly took the position that it lacked authority to investigate. A suit was arranged in the state court between these two bodies to determine this. It does not appear that any of the plaintiffs were made parties. The suit was filed July 3, 1962, and on May 16, 1963, that court held that the School Board had no obligation to investigate and that in any event the 35 applications that were filed by May 31 could be disregarded because not filed with the proper official.
 
 
 8
 Additional letter applications were filed on August 3, 1962, addressed to the School Board and the Pupil Placement Board, requesting transfer or assignment of 29 Negro children to Powhatan School. These were received by the Division Superintendent. Later, the parents of two of these plaintiffs supplemented their letter applications with official application forms which, however, they marked as signed "under protest," evidently intending to preserve whatever rights they had under their earlier unprinted applications. Of those who had applied by letter, three children were brought by their parents to the Powhatan School for enrollment on August 30. They were referred to the Superintendent, who in turn referred them to the Supervisor at Pocahontas School. A few days later, a motion was made on their behalf in the District Court proceeding for a temporary restraining order and/or interlocutory injunction against the defendants to restrain them from refusing to permit these three infant plaintiffs to be enrolled and to attend the Powhatan Elementary School.
 
 
 9
 By August 17, 1962, when the present action was instituted in the United States District Court, the local school authorities had not yet forwarded any applications to the Pupil Placement Board.
 
 
 10
 While attempts were made to file applications, culminating in the District Court action, discouraging rumors were spread in the Negro community, raising fears that by pressing for their altogether valid rights they would bring about a shut-down in the county schools. Repeatedly cited as a warning example was the experience of adjacent Prince Edward County where the School Board closed the public schools four years ago and kept them closed rather than abandon the segregated system. If the record fails to establish that the school officials themselves actively propagated such fears, it plainly shows that they said and did nothing to allay the apprehensions which pervaded their community.
 
 
 11
 After a hearing, the District Court on January 2, 1963, found the facts substantially as they had been alleged by the plaintiffs. An injunction against racial discrimination in the admission of students was granted. The court, taking note of the events in nearby Prince Edward County, further enjoined the defendants from closing the schools of Powhatan County.[2] The School Board was directed to submit a plan of desegregation within 90 days,[3] but because of the pendency of the above-mentioned state court proceeding between the School Board and the Pupil Placement Board, the court decided to abstain from any action in respect to all of the plaintiffs except the three who had moved for an interlocutory injunction. These three, Pauline Estella Evans, Alcibia Olene Morris and Maria Concetta Morris, were ordered admitted to the Powhatan Elementary School. The plaintiffs' prayer for the allowance of counsel fees was denied.
 
 
 12
 However, pursuant to the motion of the defendants, the court, two days after entering the above order, suspended it pending appeal, in all respects except as to the injunction against the closing of the schools. The plaintiffs appealed and defendants, other than the Pupil Placement Board, entered a counter-appeal. The appeal of the plaintiffs is from the order suspending the earlier order granting relief: (a) admitting the three children, (b) enjoining discrimination and (c) requiring the submission of a plan. They also appeal from the court's refusal to grant relief to the remaining infant plaintiffs, and to award counsel fees. The defendants' appeal is from so much of the order of January 2, 1963, as granted relief to the plaintiffs.
 
 
 13
 The record discloses a persistent purpose and plan on the part of the defendants to deny the plaintiffs their constitutional rights and pretextuously to invoke against them rules which in practice had no application to white pupils. This the defendants did after making it difficult, if not impossible, for the rules to be complied with, by failing to make available before the deadline sufficient official application forms and later refusing to consider applications not on official forms. They furthered their obstructive purpose by refusing to act upon applications, regardless of when made, and by interposing captious objections that applications had been presented to the Division Superintendent instead of to the school principal, when in fact the defendants knew that the plaintiffs would quite naturally rely on the regulation of the Pupil Placement Board which specified filing with the Division Superintendent.
 
 
 14
 The speciousness of the defendants' objections is further illustrated by their claim that applications were incomplete in neglecting to specify the school to which placement or transfer was desired. The plain answer is that, in the first place, no space was provided on the official application for this information; and secondly, in a county maintaining only two schools, a request for transfer from one must as a matter of common sense mean transfer to the other.
 
 
 15
 Commenting on the defense that the applications of the plaintiffs are for one reason or another invalid and not to be considered, the District Judge said:
 
 
 16
 "In the case at bar the fact that the applications were filed late is not a sufficient ground for denying the relief which the plaintiffs seek. In the first place, the uncontradicted evidence shows that application forms for the use of students and their parents were not available at Pocahontas School on May 29, 1962. The regulations provided that May 31st was the last day upon which they could be filed. The evidence is silent as to whether they were provided prior to May 31st. In the second place, the School Board did not transmit the applications made June 8, 1962 to the Pupil Placement Board until after the motion for a temporary restraining order was made. The applications were transmitted, together with other applications from white and Negro children at such a late date that the Pupil Placement Board was unable to consider them until after the school term had started. There is no reason to believe that had Maria Concetta Morris' application been made prior to September 4, 1962, it would have been treated differently from those made in June.
 
 
 17
 "In the third place, the evidence discloses that if these applicants had been white children they would have been temporarily admitted to Powhatan School pending formal placement in that school upon routine consideration of their late applications. The Virginia Pupil Placement Act, Section 22-232.1, et seq. of the Code of Virginia, 1950, makes no distinction between white and Negro children. Such distinctions must not be read into the Act under the guise of administrative requirements."
 
 
 18
 The order enjoining against racial discrimination and requiring the School Board to submit a plan for desegregation is unimpeachably correct. E. g., Marsh v. County School Board of Roanoke County, 305 F.2d 94, 99-100 (4th Cir. 1962); Jeffers v. Whitley, 309 F.2d 621, 629-630 (4th Cir. 1962); Wheeler v. Durham City Board of Education, 309 F.2d 630, 633 (4th Cir. 1962).
 
 
 19
 As to the injunction against closing the schools, it is objected that the broad language may jeopardize the School Board's unquestioned authority to close schools in health emergencies and bad weather. We do not read the injunction to touch upon these matters, and the asserted fears are groundless.
 
 
 20
 It is also contended that the defendants have no power to assure against the closing of the schools, since it is the Board of County Supervisors, not the School Board or the Division Superintendent, that appropriates funds for the operation of schools; and that as the Board of Supervisors has not been named defendant in this case, the extent of the obligations of the latter should not be here adjudicated. The defendants, continuing this argument, say that as they are not principal actors in respect to appropriations, they should not be enjoined.
 
 
 21
 The answer is that in respect to the Board of County Supervisors we agree: Since it is not a party its duty should not be adjudicated here and we do not find it necessary to deal with the Board of Supervisors in this appeal.[4] The injunction operates only against the defendants and prohibits them from taking any steps or action designed to bring about the closing of schools. The defendants are not enjoined in respect to conduct of others not acting in concert with them. They are enjoined from acting directly or indirectly to close the schools of their County during such time as other public schools are open in Virginia. They are not told to exercise powers they do not have; they are merely forbidden to take any steps themselves toward the closing of the schools, and this injunction is necessary to prevent a violation of the equal protection clause of the Fourteenth Amendment. Cf. Hall v. St. Helena Parish, 197 F.Supp. 649 (E.D. La.1961) (three-judge court), aff'd per curiam, 368 U.S. 515, 82 S.Ct. 529, 7 L.Ed.2d 521 (1962).
 
 
 22
 The District Court's order admitting three of the infant plaintiffs to the Powhatan School is clearly correct. See, e. g., Jackson v. School Board of the City of Lynchburg, 308 F.2d 918 (4th Cir. 1962), and their admission should be delayed no longer. The suspension order as to them is regrettable, but as its effectiveness terminates with the decision of the present appeal and the plaintiffs will be admitted in September, there is no need to discuss this point.
 
 
 23
 The record discloses an undeviating adherence to the system of segregation, sustained by acts of omission and commission. Yet the defendants make the incredible assertion that there is no showing that segregation in Powhatan County is involuntary. Further, their counsel declared in oral argument: "If it is our duty to encourage integration, then we have violated our duty!" The School Board has indeed violated its duty. It is upon the very shoulders of school boards that the major burden has been placed for implementing the principles enunciated in the Brown decisions. Quite explicitly the Court declared:
 
 
 24
 "School authorities have the primary responsibility for elucidating, assessing, and solving these [varied local school] problems [attendant upon desegregation]; courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing constitutional principles." 349 U.S. 294, 299, 75 S.Ct. 753, 755 (1955).
 
 
 25
 The School Board argues that whatever segregation exists must be deemed voluntary until a valid transfer application is filed. They look for support to the state court decision declaring that it was not their duty to conduct any investigations and that the applications were void and should be disregarded. We, however, hold that the entire record, including the filing of these applications and of the present complaint itself, amply demonstrates the involuntary character of segregation in the Powhatan schools. Moreover, the continuing practice of initially assigning all students by race shows that the School Board is actively engaged in perpetuating segregation. See Jeffers v. Whitley, 309 F.2d 621 (4th Cir. 1962).
 
 
 26
 The findings made by the District Court established the right not only of the three pupils considered above, but of the remaining applicants as well, to be admitted to the Powhatan School. It was error to delay consideration and relief as to them pending state court proceedings. McNeese v. Board of Education for Community Unit School District 187, Cahokia, Illinois, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). These plaintiffs too are entitled to admission at the opening of the school year in September, 1963, except those who have graduated or have voluntarily withdrawn. With all deference, the determination made in the state proceedings is not binding upon us in the adjudication of the federal rights of the plaintiffs.
 
 
 27
 Finally, we consider the District Court's denial of counsel fees to the plaintiffs. The general rule is that the award of counsel fees lies within the sound discretion of the trial court but, like other exercises of judicial discretion, it is subject to review. The matter must be judged in the perspective of all the surrounding circumstances. Local 149, U. A. W. v. American Brake Shoe Co., 298 F.2d 212 (4th Cir.), cert. denied, 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed.2d 276 (1962). Here we must take into account the long continued pattern of evasion and obstruction which included not only the defendants' unyielding refusal to take any initiative, thus casting a heavy burden on the children and their parents, but their interposing a variety of administrative obstacles to thwart the valid wishes of the plaintiffs for a desegregated education. To put it plainly, such tactics would in any other context be instantly recognized as discreditable. The equitable remedy would be far from complete, and justice would not be attained, if reasonable counsel fees were not awarded in a case so extreme. See Rolax v. Atlantic Coast Line RR Co., 186 F.2d 473, 481 (4th Cir. 1951) (Parker, C. J.); cf. Vaughan v. Atkinson, 369 U.S. 527, 530-531, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).
 
 
 28
 On remand the court will pass an order in conformity with this opinion.
 
 
 29
 Affirmed in part, reversed in part, and remanded.
 
 
 30
 HAYNSWORTH and BOREMAN, Circuit Judges, think the disallowance of attorneys fees was within the bounds of the discretion lodged in the District Judge. They dissent from the direction that such fees be allowed, but, otherwise, concur in the foregoing opinion.
 
 
 
 Notes:
 
 
 [1]
 Two were subsequently withdrawn
 
 
 [2]
 The exact language of this portion of the court's order is as follows:
 "The defendants, and each of them, their successors in office, their agents and employees, and all other persons in active concert or in participation with said defendants, or their successors in office, who receive actual notice of this order, are hereby enjoined, during such time that other public schools, or any of them, in the Commonwealth of Virginia are open and until further order of this Court, from in any manner, directly or indirectly, taking any steps or action designed to bring about the closing of one or more public schools in Powhatan County, Virginia, or grades or classes thereof, or from in any manner, directly or indirectly withholding funds or failing to appropriate or pay funds for the operation of any public school or grades or classes thereof in Powhatan County, Virginia."
 
 
 [3]
 The relevant portion of the order is as follows:
 "The County School Board of Powhatan County and the Division Superintendent of Schools, however, are granted leave to file with the Court within 90 days a plan to provide for immediate steps commencing with the next school term in the Fall of 1963, to terminate discriminatory practices with respect to assignment of students to the public schools. If a plan is submitted and approved, the injunction [against racial discrimination] shall be suspended and the assignment of students shall be in accordance with the plan.
 
 
 [4]
 In the case of Griffin v. Board of Supervisors of Prince Edward County, 4 Cir., 322 F.2d 332, the Board of County Supervisors is named a party; the nature and extent of its duties has been argued in that appeal. Presumably, the decision there may throw light on the duties of Powhatan's Board of County Supervisors. At all events we do not decide the question in this case