James S. BUCKNER, Jr., and Thomas W. Buckner, infants, by James S. Buckner and Lucille V. Buckner, their next friends, Charles Morton and Stanley Morton, infants, by James E. Morton and Dorothy Morton, their next friends, and Thomas Brock and Emma Brock, infants, by Susie Williams, their next friend, Appellants,

v.

COUNTY SCHOOL BOARD OF GREENE COUNTY, VIRGINIA, Margaret B. Trimmer, Whitelow Snow, E. C. Compton, William H. Wetsel, individually and as Division Superintendent of Schools of Greene County, Virginia, and E. J. Oglesby, Alfred L. Wingo and E. T. Justis, individually and constituting the Pupil Placement Board of the Commonwealth of Virginia, Appellees.

No. 9325.

United States Court of Appeals
Fourth Circuit.

Argued April 27, 1964.

Decided May 25, 1964.

Henry L. Marsh, III, Richmond, Va. (S. W. Tucker, Richmond, Va., on brief), for appellants.

No argument or brief for appellees.

Before SOBELOFF, Chief Judge, and HAYNSWORTH, BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges, sitting en banc.

SOBELOFF, Chief Judge.

Suing for themselves and in behalf of others constituting a class similarly situated, six Negro plaintiffs alleged in their complaint, filed in the Western District of Virginia, that the County School Board of Greene County, Virginia, is operating its school system in violation of the Fourteenth Amendment. The complaint sought: (1) admission of the named plaintiffs to a specified school, (2) an injunction against the operation of a bi-racial school system throughout the county, and (3) an award of counsel fees.

It was alleged that there are two elementary schools in Greene County (one for white students and one for Negroes) and one white high school. Negro high school students are sent to a Negro high school out of the county.

After the filing of the suit, the Pupil Placement Board granted the applications of three of the six individual plaintiffs for their transfer to the only high school in the county. Two other infant plaintiffs applied through their foster parents for transfer to the county high school, but the Pupil Placement Board rejected the applications because the County Welfare Department, which had placed these children in the custody of the foster parents, had not signed the applications. Since the institution of the suit, the parents of the sixth plaintiff have informed the Placement Board by letter that they do not desire their child to be transferred. The District Court, believing the case to be moot because all of the individual infant plaintiffs were in schools chosen by their parents or legal guardians, removed the case from the active docket.

In refusing to consider injunctive relief and terminating the suit, the District Court disregarded the precedents in this court and elsewhere, and indeed the decisions of the Supreme Court itself.

In light of the Supreme Court's explicit holding that it is the obligation of local school authorities to take affirmative action to "make a prompt and reasonable start toward full compliance," Brown v. Board of Education, 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955), it would be unreasonable for the court to require the plaintiffs to formulate plans for desegregation. As the Supreme Court said in the second Brown decision, "The burden rests upon the *defendants* * * *." (Emphasis added). The Court has since declared in Cooper v. Aaron, 358 U.S. 1, 7, 78 S.Ct. 1401, 1404, 3 L.Ed.2d 5 (1958), "State authorities were thus duty bound to devote every effort toward *initiating desegrega-*

*tion* and bringing about the elimination of racial discrimination in the public school system." (Emphasis added.) It is these school officials, not the infant plaintiffs or their parents, who are familiar with the operation of the school system and know the administrative problems which may constitute the only legitimate ground for withholding the immediate realization of constitutionally guaranteed rights.

By initially assigning Negro pupils to segregated schools and then permitting them, only upon application to the Pupil Placement Board, to transfer out of these segregated schools, the School Board has in effect formulated a plan which will require each and every Negro student individually to take the initiative in seeking desegregation. Naturally, as we have noted in Jones v. School Board of Alexandria, Virginia, 278 F.2d 72, 77 (4th Cir.1960), because of the existing racial pattern, in most cases "it will be Negro children, primarily, who seek transfers." In the context of the present case, it is only they who have need for transfers.

■ Speaking in a single voice on this point, this circuit has said in Bell v. School Board of Powhatan County, Virginia, 321 F.2d 494, 499 (4th Cir. 1963):

> "Further, their [School Board] counsel declared in oral argument: 'If it is our duty to encourage integration, then we have violated our duty!' The School Board has indeed violated its duty. It is upon the very shoulders of school boards that the major burden has been placed for implementing the principles enunciated in the Brown decisions. Quite explicitly the Court declared: 'School authorities have the primary responsibility for elucidating, assessing, and solving these [varied local school] problems [attendant upon desegregation]; courts will have to consider whether the action of school authorities constitutes good faith implementation of the

governing constitutional principles.' 349 U.S. 294, 299, 75 S.Ct. 753, 755 [99 L.Ed. 1083] (1955)."

It is too late in the day for this school board to say that merely by the admission of a few plaintiffs, without taking any further action, it is satisfying the Supreme Court's mandate for "good faith compliance at the earliest practicable date."

■ The right of the plaintiffs to obtain injunctive relief for the class they represent as well as individual relief for themselves is clear beyond doubt. School Board of the City of Charlottesville, Virginia v. Allen (County School Bd. of Arlington County v. Thompson), 240 F.2d 59 (4th Cir.1956), upheld the plaintiffs' right "to obtain a general injunction against the school officials prohibiting racial discrimination in the administration of the schools * * *." Green v. School Board of City of Roanoke, Virginia, 304 F.2d 118, 123 (4th Cir.1962). And these cases blazed no new trail. Injunctions were similarly ordered in Frasier v. Board of Trustees of University of North Carolina, 134 F. Supp. 589, 593 (M.D.N.C.1955) (three-judge court), aff'd per curiam, 350 U.S. 979, 76 S.Ct. 467, 100 L.Ed. 848 (1956), against discriminatory administration of the University of North Carolina.

In Green v. School Board of City of Roanoke, Virginia, supra, the court repeated that "the individual [Negro] appellants are entitled to relief, and *also they have the right to an injunction on behalf of the others similarly situated.*" (304 F.2d at 124). (Emphasis added). The same principle was enunciated and injunctions were ordered in Jeffers v. Whitley, 309 F.2d 621 (4th Cir.1962), and Wheeler v. Durham City Board of Education, 309 F.2d 630 (4th Cir.1962). In the latter case the court said:

> "[T]hese plaintiffs are entitled to an order for their admission for the 1962-63 school year to the schools for which they have applied, to a declaratory judgment that the defendants are administering the

North Carolina Pupil Enrollment Act in an unconstitutional manner, *and to an injunction against the continuance of the board's discriminatory practices.* The injunction shall control all future assignment of pupils to schools unless and until the defendants submit to the District Court a suitable plan for ending the existing discrimination. 'Any such plan, before being approved by the District Court, should provide for immediate steps looking to the termination of the discriminatory practices "with all deliberate speed" in accordance with a specified time table.' [Green v. School Board of City of Roanoke, 304 F.2d 118 (4th Cir.1962)]." (309 F.2d at 633). (Emphasis added.)

In Bradley v. School Board of the City of Richmond, Virginia, 317 F.2d 429 (4th Cir.1963), we again said:

"[N]ot only are the individual infant plaintiffs entitled to relief which has been ordered but the plaintiffs are entitled, on behalf of others of the class they represent and who are similarly situated, to an injunction against the continuation of the discriminatory system and practices which have been found to exist."

The opinion in that case gives numerous supporting citations.

Just last term, in a Per Curiam opinion we remanded to the District Court a case almost identical with this one. Brown v. County School Board of Frederick County, Virginia, 327 F.2d 655 (4th Cir.1964). What we said there applies with equal force here:

"Since the record discloses the existence of a bi-racial system of schools, we remand for consideration of the plaintiffs' prayers for an injunction and counsel fees in the light of this court's opinions in Bradley v. School Board of the City of Richmond, 317 F.2d 429 (4th Cir.1963), and Bell v. School Board of Pow-

hatan County, 321 F.2d 494 (4th Cir.1963)."

If, as alleged in the complaint, students were initially being assigned to schools in a racially discriminatory manner, "the School Board is actively engaged in perpetuating segregation." Bell v. School Board of Powhatan County, Virginia, 321 F.2d at 499. Moreover, this case presents discrimination in a most pernicious form. As early as 1949, even before the Supreme Court condemned the "separate but equal" doctrine, the Fourth Circuit, speaking through Judge Parker, expressly disapproved the sending of Negro students out of the county to attend segregated schools. Corbin v. County School Board of Pulaski County, 177 F.2d 924 (4th Cir. 1949). Similarly, after the Supreme Court's decisions, we held in School Board of Warren County v. Kilby, 259 F.2d 497, 498 (4th Cir.1958), that "[b]y any possible test, this discrimination is legally indefensible."

When Judge Martin enjoined the Charleston, South Carolina, School Board from continuing its policy of racial segregation and ordered them to admit all applicants to the schools of their choice until the Board had submitted to the court and gained approval of a plan of desegregation, we upheld the court's action as appropriate. Brown v. School District No. 20, Charleston, South Carolina, 328 F.2d 618 (4th Cir.1964).

Neither the School Board nor the Pupil Placement Board in this case has intimated that it anticipates any administrative difficulty in effectuating a desegregation plan. In fact, both boards have as much as conceded the case. In a letter to this court informing us that no brief would be filed nor an appearance be made on behalf of the appellees, counsel for the Placement Board recognize that Brown v. County School Board of Frederick County, Virginia, supra, "is applicable and would control this case" and that the Board "had no reasonable alternative and would simply be wasting money to go to any more expense in this particular case."

As we said in Jeffers v. Whitley, 309 F.2d 621, 629 (4th Cir.1962):

"In these circumstances, the duty of the court, as a court of equity, is traditionally discharged through injunctive orders."

We added that the plaintiffs were

"entitled to an order enjoining the School Board from refusing admission to any school of any pupil because of the pupil's race. So long as the School Board follows its practice of racial assignments, the injunctive order should require that it freely and readily grant all requests for transfer or initial assignment to a school attended solely or largely by pupils of the other race."

Marsh v. County School Board of Roanoke County, Virginia, 305 F.2d 94 (4th Cir.1962); Green v. School Board of the City of Roanoke, Virginia, 304 F.2d 118 (4th Cir.1962); Farley v. Turner, 281 F.2d 131 (4th Cir.1960); Jones v. School Board of City of Alexandria, Virginia, 278 F.2d 72 (4th Cir.1960); Hamm v. County School Board of Arlington County, Virginia, 263 F.2d 226 (4th Cir.1959); Board of Education of St. Mary's County v. Groves, 261 F.2d 527 (4th Cir.1958); School Board of City of Norfolk, Virginia v. Beckett, 260 F.2d 18 (4th Cir.1957); County School Board of Arlington County, Virginia v. Thompson, 252 F.2d 929 (4th Cir.1958); Allen v. County School Board of Prince Edward County, Virginia, 249 F.2d 462 (4th Cir.1957); School Board of City of Newport News, Virginia v. Atkins, 246 F.2d 325 (4th Cir.1957); School Board of Charlottesville, Virginia v. Allen, 240 F.2d 59 (4th Cir.1956).[1]

And when the School Board of Arlington County, Virginia, recited that it had achieved a measure of desegregation and should, therefore, be relieved of the injunctive order, and its prayer was granted by the District Court, we reversed and ordered the injunction to be reinstated. Brooks v. School Board of Arlington County, Virginia, 324 F.2d 303 (4th Cir.1963).

Again the language used in last term's Frederick County case is appropriate here:

"Under these circumstances, there would seem to be no obstacle to the entry of an order requiring the abandonment of these practices not later than the opening of the next school year. The district court, of course, may desire to hear further from the defendants before entering any orders with respect either to the injunction or the request for counsel fees."

Inasmuch as no hearing has been held we remand this case to the District Court for early proceedings not inconsistent with this opinion, upon the prayers for injunctive relief and for counsel fees.

ALBERT V. BRYAN, Circuit Judge (dissenting in part).

I do not think this is a case for the award of counsel fees. Therefore, I would strike from the remand the direction to the District Court to consider the prayer for such an allowance. In other respects I concur in the opinion of the Court.

---

1. Accord, Northcross v. Board of Education of City of Memphis, 302 F.2d 818 (6th Cir. 1962):

"The motion to dismiss the appeal must be and it is hereby overruled. The admission of thirteen Negro pupils, after a scholastic test, out of thirty-eight who made application for transfer, is not desegregation, nor is it the institution of a plan for a non-racial organization of the Memphis school system.

\*   \*   \*   \*   \*

"The judgment of the District Court is reversed with instructions to restrain the defendants from operating a biracial school system in Memphis, or in the alternative to adopt a plan looking toward the reorganization of the schools, in accordance with the Constitution of the United States."

Mannings v. Board of Public Instruction, 277 F.2d 370, 372–375 (5th Cir. 1960); Orleans Parish School Board v. Bush, 242 F.2d 156, 165 (5th Cir. 1957).