Harriett D. NESBIT et al., Appellants,

v.

The STATESVILLE CITY BOARD OF EDUCATION, a public body corporate of Statesville, North Carolina, and A. D. Kornegay, Superintendent of Statesville City Public Schools, Appellees.

No. 9632.

United States Court of Appeals Fourth Circuit.

Argued Nov. 5, 1964.

Decided April 7, 1965.

**334**

James M. Nabrit, III, New York City, (Conrad O. Pearson, Durham, N. C., J. LeVonne Chambers, Calvin L. Brown, Charlotte, N. C., Jack Greenberg, Derrick A. Bell, Jr., and Melvyn Zarr, New York City, on brief), for appellants.

R. A. Collier, Statesville, N. C. (Collier, Harris & Collier, Statesville, N. C., on brief), for appellees.

Before SOBELOFF, Chief Judge, and HAYNSWORTH, BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges, sitting en banc.

HAYNSWORTH, Circuit Judge:

The plaintiffs have appealed from an order approving a plan for the desegregation. of the schools in Statesville, North Carolina. Terms of the plan are discoverable only from colloquies between court and counsel on the record in this case. It has not otherwise been reduced to writing, except for the District Judge's description of it in his opinion. In consequence, some uncertainties now appear which require a remand of the case for further findings.

There are approximately six thousand pupils in Statesville's schools, one-third of them being Negroes. The schools were completely segregated until 1963 when nine transfer applications by Negroes were approved. After holding public hearings, the School Board decided to grant all transfer applications filed on behalf of first graders and high school pupils, while denying all others.

This action was filed by some of the transfer applicants whose requests were denied.

At the hearing, it was apparent that the Board had expanded its original approval of permissive transfers limited to the first and high school grades. It there appeared that for the school year 1964–65, free transfers would be allowed within the first six grades. Availability of free transfers would be extended to grades ten through twelve in 1965–66, and to grades seven through nine in 1966–67.[1]

In addition to the provision of free transfers to be accomplished in three successive annual steps, the plan at the hearing appeared to provide also for freedom of choice in initial assignments. There were statements that the parents of a child about to enter the first grade could enroll the child in any school they wished and references to the Board's intention to operate on an "open enrollment" basis. These led the District Court to the conclusion that the plan provided such freedom of choice as to make it nondiscriminatory and approvable under the principles we reaffirm today in the Richmond case.[2]

■■ Some misunderstanding is evident, however. Counsel for the School Board in this Court refers to the continued use of dual attendance zones. The extent and purpose of their use is unclear, but whatever they may be, dual attendance zones have no place in a freedom of choice system. As we point out in today's decision in the Richmond case, freedom of transfer out of a segregated system is not a sufficient corrective in this Circuit. It must be accompanied by an elimination of discrimination in handling initial assignments.[3]

---

1. A Negro child in the sixth grade in 1964–65, actually transferred in accordance with the plan, will go on to junior high school with his white classmates, though, under the plan, transfers in grade seven are not allowable in 1965–66.

2. Bradley v. School Board of Richmond, Virginia, 4 Cir., 345 F.2d 310 (decided today).

3. When a District Court has before it no plan which it can approve with or without modification, an order requiring free allowance of transfer requests may be appropriate as an interim judicial step. See Wheeler v. Durham City Board of Education, 4 Cir., 309 F.2d 630, and Jeffers v. Whitley, 4 Cir., 309 F.2d 621. When a school board seeks the Court's approval

It may be that the Board's counsel here misunderstands the Board's intentions. What has been said in the oral argument in this Court seems inconsistent with the general impression the record gives the reader. The record, however, is indefinite. It is singularly unspecific about the assignment of new pupils coming into the system above the first grade level. It is even possible that the statement that the parents of a first-grader may enroll him in any school they choose is referable to the unrestricted right of transfer. The general references to an "open enrollment" plan cannot resolve these uncertainties which are made apparent by the statements of counsel here.

■ Since these uncertainties cannot be resolved by reference to the present record, we cannot determine the correctness of the District Court's conclusion that the Board's plan is a valid, voluntary one. Such a determination can be made only after a further hearing and upon additional findings. For that purpose, the case will be remanded.

In view of the uncertainties that have now become apparent, the District Court may wish to consider the appropriateness of a requirement that the School Board, in advance of the hearing, reduce its plan to writing and file it with the Court. A carefully prepared, accurate description of the plan with such specificity as to resolve those uncertainties which are now apparent and all others of a like nature may materially facilitate final disposition of the case. It may also furnish a firmer basis for confident judgment of the Board's intentions.

The opinion in the Richmond school case, as supplemented here, sufficiently presents the principles by which the Board's plan is to be measured.

The District Court also may wish to give further consideration to the plan's three-step progression.

■ In other Circuits, stair-step plans for desegregation of the schools have been repeatedly approved. Atlanta's twelve-step plan was approved little more than a year ago.[4] Undoubtedly, there is a discretionary area within which a District Judge may allow some delay in full implementation of desegregation in some schools or grades. But permissible delay must arise out of administrative problems and operational difficulties, and the passage of time has contracted the discretionary area.[5] After the Supreme Court's opinion in Calhoun v. Latimer and in light of the earlier cases cited there, present requests for extended delay are not likely to receive approval anywhere.

A three-year progression in which half of the grades are opened the first year may well be within the restricted discretion which still remains in a District Court. We are not prepared to say that the District Court's approval of it here was beyond his discretionary authority.

When the District Court acted, however, it and the School Board had only the experience of 1963–64 to guide it. Earlier, it had not indicated a disposition to grant transfer applications, but for that year it received a number of requests. It granted nine of them in the levels of the first and high school grades. Since then the Board has had the benefit of its experience with transfer applications for the 1964–65 school year. Those for that year in the first six grades were received after the Board had announced its intention to grant all such requests. Certainly that experience will have shed new light on the nature and extent of the schools' problems and difficulties. In that light, the need to postpone to 1966–67 free transfers in the junior high schools, which will be mixed to some extent in 1965–66 by reason of the promotion of sixth grade pupils, ought to be re-examined.

of a plan proffered as being in complete compliance with the law's requirements, however, a court ought not put its stamp of approval upon it if initial assignments are both racial and compulsory.

4.  Calhoun v. Latimer, 5 Cir., 321 F.2d 302.

5.  Calhoun v. Latimer, 377 U.S. 263, 84 S.Ct. 1235, 12 L.Ed.2d 288.

For these purposes, the judgment below will be vacated and the case remanded for further proceedings.

Vacated and remanded.

SOBELOFF and J. SPENCER BELL, Circuit Judges (concurring separately):

We concur generally, and for a more complete expression of our views as to the proceedings appropriately to be taken on remand, we refer to our separate opinion in Bradley v. School Board of City of Richmond, 4 Cir., 345 F.2d 310, decided today.