Mamie E. **FELDER** et al., Appellees,

v.

**HARNETT COUNTY BOARD OF EDUCATION** and G. T. Proffit, Superintendent of the Schools of Harnett County, Appellants.

No. 12894.

United States Court of Appeals
Fourth Circuit.

Argued Feb. 3, 1969.

Decided April 22, 1969.

Robert B. Morgan, Lillington, N. C., for appellants.

J. LeVonne Chambers, Charlotte, N. C. (Conrad O. Pearson, Durham, N. C., Jack Greenberg, James M. Nabrit, III, Robert Belton, New York City, and Chambers, Stein, Ferguson & Lanning, Charlotte, N. C., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN, WINTER, CRAVEN and BUTZNER, Circuit Judges, sitting en banc.

CRAVEN, Circuit Judge:

This is an appeal from an order of the district court requiring of the defendant Board of Education more specificity in its plan for desegregation of the Harnett County Schools. This is the second appeal of the School Board, and again we affirm the order of the district court.

The first appeal was from an order entered August 21, 1964. The district court found at that time that there were 13,000 students in the Harnett County Schools, approximately 6,000 of whom were Negroes. Of the 20 public schools then operated by the county, six were attended solely by Negroes, and no Negro pupil had been assigned or transferred to a school attended solely or largely by pupils of another race. The district court concluded that the defendants were operating a racially segregated and discriminatory public school system and ordered that defendants transfer and admit plaintiff, Deborah Felder, to the elementary school to which she had requested transfer. It was further ordered that the other plaintiffs be allowed to file application for transfer to schools serving their grade level attended solely or largely by pupils of another race. The defendants were enjoined from refusing plaintiffs' admission to the schools of their choice because of their race. Finally, the district court ordered, retaining jurisdiction for further proceedings, that if the defendant Board did not adopt a nondiscriminatory plan of pupil assignment, it was to inform pupils and parents of the right of free choice at the time of initial assignment and at such reasonable times thereafter to be determined by the Board with approval of the court. In a per curiam opinion, we affirmed

the order of the district court, 349 F.2d 366 (1965).

The present dispute arose when, on May 13, 1967, plaintiffs moved the district court for further relief *i. e.*, seeking to have the School Board submit a plan for complete desegregation of the school system. The motion was heard July 23, 1968, and the district court entered its order that day in open court. The findings, conclusions and order were signed *nunc pro tunc* August 7, 1968. It was found that pursuant to the court's order of August 1964 one or more Negro students had been assigned to formerly all-white schools for the 1964–1965 school year. For the 1965–66 term the Board had adopted a freedom-of-choice plan affecting four grades, and 61 Negro students were assigned to formerly all-white schools. For the 1966–67 and 1967–68 terms, the freedom-of-choice plan was made applicable to all grades, pursuant to which 175 Negroes for the 1966–67 term and 166 Negroes for the 1967–68 term were assigned to previously all-white schools.

The district court found further that prior to the 1966–67 term no teachers or school personnel had been assigned across racial lines. For 1966–67, defendant assigned four white teachers to previously all-Negro schools and 12 Negro teachers to previously all-white schools. In 1967–68, 27 Negro teachers and 12 white teachers were assigned across racial lines. Although for 1968–69, 179 Negro students had requested and received assignment to previously all-white schools, the district court found that the Board of Education had not submitted any projected figures for teacher and pupil assignment for that year and had not presented a sufficient plan for desegregation of the Harnett County school system.

The court concluded that the Harnett County school system was an unconstitutional racially dual system and that the freedom-of-choice plan followed by the Board was inadequate to effectuate a racially nondiscriminatory school system. The remedial order required the Board to file by August 5, 1968, a plan of desegregation to eliminate the dual school system and to effectuate a transition to a unitary nonracial system by the opening of the 1969–70 school term. It was required that the plan provide "for the assignment of all students upon the basis of a unitary system of nonracial geographic attendance zones, or a plan for the consolidation or pairing of schools or grades or both." The court further required that there be no racial discrimination in the employment of teachers and school personnel and in school programs, activities and facilities. Finally, the court ordered that location of new schools and expansion of existing facilities consistent with proper operation of the system as a whole be effected with the objective of eradicating the vestiges of the dual school system.

On August 5, 1968, the School Board submitted its plan of desegregation to the district court. The plan called for closing the three all-Negro high schools with the beginning of the 1968–69 school year and assigning the pupils to predominately white schools. No plan for eliminating segregation in the elementary schools was submitted. Instead, the School Board proposed to "institute a detailed study as to the best plan for completing a unitary system in both high schools and elementary schools in the county by the beginning of the school year 1969–70." Noting that the time for "study" had passed, the district court again, on August 8, 1968, ordered defendant to file with the court before August 19, 1968, "a new and comprehensive plan of desegregation to be accomplished by the opening of the school year 1969–70 in compliance with the order of [the] court entered on July 23, 1968."

The School Board did, on August 19, 1968, submit a second plan to the court. It again proposed closing the three all-Negro high schools in the system with the beginning of the 1968–69 school year and assigning these students to pre-

dominately white schools.[1] All elementary school children were under the plan to be assigned "to the school nearest their home without regard to race, subject to space limitation, in which event the children will be assigned to the second nearest school nearest their home, without regard to race * * *." The plan provided for transportation of all students without racial discrimination.

On August 28, 1968, the district court found the proposed plan inadequate "in that the provisions relating to the high school students provide only for the involuntary assignment of Negro students to predominately white schools, and the provisions relating to elementary schools fail to utilize geographic attendance zones, consolidation, pairing of schools or grades or both" as directed by the July 23 and August 8 orders.

The district court ordered that the plan proposed August 19, 1968, be implemented for the 1968–69 school year and that the defendants file with the court before December 1, 1968, a comprehensive plan to completely desegregate all the elementary and secondary schools in the county school system in strict compliance with the July 23 and August 8 orders.

It is from the August 28, 1968, order of the district court that the School Board appeals. The Board's contentions worthy of enumeration come to these: (1) The district court incorrectly decided that the freedom-of-choice plan followed in Harnett County was inadequate to effectuate a transition to a racially nondiscriminatory school system. (2) It was improper for the district court to require that any plan submitted should provide for assignment of all students upon the basis of a unitary system of nonracial geographic attendance zones or, as an alternative, a plan for the consolidation or pairing of grades or schools or both. (3) And even if the district court's order was correct, it erred in refusing to approve the plans of August 5 and August 19, 1968, submitted by the School Board.

On May 27, 1968, the Supreme Court decided the companion cases Green v. School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716; Raney v. Board of Education, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727; and Monroe v. Board of Commissioners, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733, which taught that freedom-of-choice is but a means to the end of achieving a nonracial system of public education and that the School Board has the "affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch,"[2] a system in which there are no white schools and no Negro schools but just schools.

In *Green*, 13 years after Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (Brown II), commanded abolition of dual school systems, the Supreme Court found that New Kent County's freedom-of-choice plan was inadequate to accomplish that end in that in the three years of its operation no white pupil had chosen to attend the county's Negro school and 85 percent of the Negro children in the system still attended the county's all-Negro school. The district court found similar circumstances to exist in Harnett County in its July 23, 1968, order. After three years of freedom-of-choice in Harnett County (the schools were completely segregated up to and throughout the 1963–64 school year), it was found that only 4.3 percent of the Negro students were attending previously all-white schools. The appendixes to the briefs filed with us indicate that there are as yet no white students in the predominately Negro schools.[3]

---

1. Apparently this has been accomplished resulting in 33.8 percent of Negro students attending so-called "white" schools.

2. Green v. School Board of New Kent County, 391 U.S. at 437, 88 S.Ct. at 1694, 20 L.Ed.2d at 723.

3. Some American Indians attend these schools.

These facts, we think, justified the district court's conclusion that the freedom-of-choice plan in Harnett County was inadequate to convert the school system into a unitary, nonracial system and justified its order for submission of a plan of desegregation. Green v. School Board of New Kent County, *supra*.

■ Moreover, the district court correctly required in its July 23, 1968, order that the plan submitted should specifically provide for pupil assignment on the basis of a unitary system of nonracial geographic attendance zones or a plan for consolidation or pairing of schools or grades or both. *Cf*. Nesbit v. Statesville City Board of Education, 345 F.2d 333, 335 (4th Cir. 1965). "[T]he court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discriminations in the future." Louisiana v. United States, 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709, 715 (1965); *see* Green v. School Board of New Kent County, *supra*, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d at 723, n. 4; Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964). The court likewise properly ordered an end to racial discrimination in the employment of teachers and school personnel and in school activities and properly required new school construction be effected with the objective of eradicating the vestiges of the dual school system.

■ In that we find the July 23, 1968, order of the district court to have been properly entered, we are compelled to find that the School Board's August 5, 1968, plan submitted pursuant to it was inadequate. That plan proposed to close the three Negro high schools and assign their students to predominately white high schools and to institute a study as to the best plan for completing a unitary system in both the elementary and high schools. It was patently not in compliance with the court's order. The only concrete proposal was in regard to the Negro high schools. There was no explanation offered as to how the School Board determined upon particular schools for extinction, nor did the closing plan disclose criteria for assignment of the students of the closed schools except for a cryptic reference to bus routes. Whether the School Board acted fairly or invidiously with reference to the Negro high school pupils is not disclosed either in theory or in the mechanics of a plan. There was no proposed pupil assignment of elementary students and no mention of ending racial discrimination in employment practices and in school activities. No resolution was made as to new school construction. For these deficiencies, the district court properly rejected the School Board's submission.

The Board's proposed plan of August 19, 1968, is not so plainly defective and appears to be a more serious effort to comply with the court's order to complete a unitary school system with the beginning of the 1969-70 school year. Again without disclosing criteria it proposes to close the Negro high schools and to assign the pupils to predominately white schools, but for the first time a proposal is made to the end of eliminating the dual system at the elementary grade level. Beginning with the school year 1969-70 Harnett County proposes to assign elementary school children to the school nearest their homes without regard to race. But if space limitation requires, elementary school children may be assigned to the school next nearest their homes. The plan has defects but the defects are not such that they may not be easily cured by more specificity on the part of the School Board.

For example, the School Board's assignment of elementary students to the school nearest or second nearest their homes will necessarily result in something akin to geographical attendance zones for the various elementary schools. But because the plan does not show exactly how the Board proposes to make these assignments it does not eliminate the possibility that the zones will be gerrymandered to perpetuate the dual

school system. Furthermore, the plan does not specify how students will be assigned from the elementary schools to the high schools and thus does not eliminate the possibility that whatever feeder system is adopted to effect this transition will not recreate a dual system at the high school level. Finally, the plan does not demonstrate nonracial criteria in the assignment of Negro high school students.

█ These deficiencies are simply illustrative. Others may occur to the district judge and to a school board intent upon dismantling a segregated system. We note also that the Board's last proposal makes no mention of eliminating racial discrimination in employment practices or in school activities, nor does it address itself to expansion of school facilities with a view toward eradicating the vestiges of the dual school system. Because of the lack of specificity in the School Board's August 19, 1968, proposal, the district court did not abuse its discretion in rejecting it and requiring strict compliance with its order of July 23, 1968.

█ We find no merit in the School Board's contention that the district court erred in refusing to sustain its motion to dismiss. "[The] District Courts 'should retain jurisdiction in school segregation cases to insure (1) that a constitutionally acceptable plan is adopted, and (2) that it is operated in a constitutionally permissible fashion so that the goal of a desegregated, non-racially operated school system is rapidly and finally achieved.' Kelley v. Altheimer [8 Cir.] 378 F.2d 483, 489. *See also* Kemp v. Beasley [8 Cir.] 389 F.2d 178." Raney v. Board of Education, *supra.*

█ We are asked by appellees to hold that the School Board's appeal is frivolous under Rule 38, Federal Rules of Appellate Procedure, and in our discretion to award damages, specifically double costs and counsel fees. Although we have seen more meritorious appeals, we do not think this one may be characterized fairly as groundless or vexatious. There is not present here the pattern of evasion and obstruction labeled "extreme" in Bell v. School Board of Powhatan County, Virginia, 321 F.2d 494 (4th Cir. 1963). Nor are the issues here mooted by compliance as were those in Coppedge v. Franklin County Board of Education, 394 F.2d 410 (4th Cir. 1968). On balance we decline to allow double costs and counsel fees. Bradley v. School Board of City of Richmond, Virginia, 345 F.2d 310 (4th Cir. 1965). Appellees will, of course, be entitled to the taxation of costs under Rule 39, Federal Rules of Appellate Procedure.

Affirmed.

SOBELOFF, Circuit Judge, (with whom WINTER, Circuit Judge, joins) concurring in part, dissenting in part:

The majority opinion has well stated the grounds for dissatisfaction with the School Board's unparticularized proposals. I concur in the affirmance of the District Court's order under the circumstances of this case. Of course, on another record, presenting different facts, geographical attendance zones might not be an effective way to accomplish the required result. See, e. g., Brewer v. School Board of City of Norfolk, Va., 397 F.2d 37, 41–42 (4 Cir. 1968).

However, I think it not too harsh to call this a frivolous appeal, and I would therefore award the plaintiffs reasonable counsel fees.[1] As the majority recognizes, citing cases, there is precedent in this circuit and elsewhere for the award of counsel fees in school cases, and the reluctance to award fees in this instance is not justified. Such an award is essential to do full justice. The allowance of reasonable counsel fees, including disbursements, would not only transfer the burdensome cost of the litigation from

---

I. Rule 38 of the Federal Rules of Appellate Procedure provides:
    If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.

those who have been and continue to be deprived of their constitutional rights to those responsible for the deprivation, but it would also provide a suitable and necessary incentive to the school authorities to get on with the task of desegregating.

At the hearing in the District Court the parties had before them the Supreme Court's decision in Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716, which held a freedom of choice plan constitutionally invalid. In the course of that opinion, the Court discussed the duty of the local boards in terms which demonstrate the frivolity of the present appeal. The Court stated that local boards are

> clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch * * *. The burden on a school board today is to come forward with a plan that promises realistically to work, and promises realistically to work *now*.

The Court went further and placed on the local board the burden of proving its plan constitutionally valid. The Court explicitly added:

> It is incumbent upon the school board to establish that its proposed plan promises meaningful and immediate progress toward disestablishing state-imposed segregation.

The facts as to the elementary pupils' residences have at all times been available to the Board, but it has not even been intimated that the Board ever analyzed the data to determine whether the plan it proposed would eliminate segregation. That inquiry the Board leaves for another day or year. Indeed, it was confessed at the hearing of the appeal that in the months intervening since the District Court's order the Board had taken no steps to make this determination. Twice since the trial in the District Court last July the Board has sub-

mitted palpably deficient plans, in the teeth of the *Green* decision. The course followed by the Board, including the taking of this appeal, is hardly consistent with its profession of a desire fully to comply with the requirements of the law.

The overall history of the case, as related in the majority opinion, and the fact that 13 years have now passed since *Brown II*, strongly suggest that the Board has acted to perform its constitutional duty only when goaded by the courts or the Department of Health, Education and Welfare. Under the circumstances, it appears that the effect, if not the intended role, of this appeal which was doomed from its inception, was merely to retard compliance.

The frivolity of the appeal is further signalled by the appellant's startling statement at page 8 of its brief that it is proceeding "upon the theory that the Harnett County Board of Education does not have to work toward the objective of the correction of racial imbalance in its various public schools." This flouts the plain requirements of the law, and it comes too late in the day to be given serious consideration by any court.

I would award reasonable attorney fees to discourage further dilatory tactics.

ALBERT V. BRYAN, Circuit Judge (dissenting):

I think the District Court, and now this court, go far too far in their exactions of the School Board. It has sincerely endeavored since the 1966–67 and 1967–68 school terms to comply with each order of the District Court.

As the majority opinion notes, by August 19, 1968 all of the Negro high school students had been placed in "white" schools, and without complaint of discrimination. Moreover

> "All elementary school children were under the plan to be assigned 'to the school nearest their home without regard to race, subject to space limitation, in which event the children will be assigned to the second nearest school nearest their home, without

regard to race * * *.' The plan provided for transportation of all students without racial discrimination."

To me this seems a fair and just arrangement and should end the litigation. But the decree now appealed by the Board demands even more of the school authorities. The administration should have been allowed room in effectuating the plan of August 19, 1968 and been let alone until corrective measures were necessitated. Not until then should the court have interfered. Overreadiness to oversee is disruptive of school operation; too, it encourages captious faultfinding, as here.

The present rulings, at trial and on appeal, are meddlesome and oppressive. I would reverse.