I respectfully dissent from that part of the opinion which directs the defendant bank to pay a substantial portion of the plaintiffs' attorney's fees. This decision is the assault on the traditional American rule that the majority recognizes has heretofore never been pursued by the courts of this nation.
Initially, I will address the contention that in Moss v.Winston, 223 Ala. 515, 137 So. 303 (1931), Alabama recognized an exception to the American rule when fraud, willful negligence, or malice has been practiced. In Moss, the Court cited Corpus Juris for the proposition that attorney's fees could be shifted where there was "fraud, willful negligence or malice." However, Moss
was only concerned with whether the pleadings were subject to demurrer. In the plaintiff's complaint there was a request for attorney's fees. The Court said that because these were special damages the demurrer was sustained because of the failure to plead fraud, willful negligence, or malice in the complaint. I have found no case since Moss where the Moss rule has been applied. The Fifth Circuit Court of Appeals in Burgess v.Williamson, 506 F.2d 870 (5th Cir. 1975), mentioned Moss and refused to apply the Moss rule, because that court also found no case where attorney's fees were actually awarded under the Moss
rule. Furthermore, the quotation from Corpus Juris in Moss is from a section on damages generally, which recognizes the American rule except for this exception. It does not purport to be an exception limited to equitable cases, as Corpus Juris says it applies in actions for "civil injury" and "breach of contract." If this is the rule in Alabama, it simply has heretofore never been applied. This Court has not approved the award of attorneys *Page 1248 
fees to successful plaintiffs in fraud or willful negligence cases.
A reading of the cases cited in support of the statement in Corpus Juris reveals that the fraud, willful negligence and malice language is really a reference to whether punitive damages were authorized. The courts would generally remark that plaintiff was only entitled to compensatory damages absent facts supporting an award of exemplary or punitive damages. The rationale of these cases seems to be that while attorney's fees are not recognized as part of compensatory damages, a jury might take into account plaintiff's attorney's fees when awarding punitive damages otherwise properly assessable as part of the basis for establishing the amount of punitive damages. Therefore, I findMoss not to be precedent for the action taken by this Court in this case.
If Alabama has not recognized the supposed fraud, willful negligence, or malice exception to the American rule, the only other arguable basis for requiring the fee shifting is under the limited exception that exists in equity cases. I recognize that a court sitting in equity has broad powers to do justice in an individual case. First Alabama Bank of Montgomery v. Martin,425 So.2d 415 (Ala. 1982) (Martin II); Sprague v. Ticonic NationalBank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). As Hallv. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), points out, two exceptions exist which allow the award of attorney's fees in equity cases. One is where the suit confers a substantial benefit on the members of an ascertainable class by creating a common fund and the attorney's fee is paid from the fund. This is the treatment given the issue of attorney's fees by the trial court in this case. The other is where a party has acted vexatiously, wantonly, or for oppressive reasons, with the fee shifting being punitive in nature. The majority opinion takes this case from the first exception and places it in the second.[1]
The authorities cited by the United States Supreme Court inHall, supra, illustrate the type of equity cases in which attorney's fees are assessed against an opposing party. The complete statement from Moore's Federal Practice, cited in Hall, is as follows:
 "The equitable power is not confined to the fund cases. It is sufficiently broad that a federal district court may award attorney's fees in favor of one party and against another, where an unfounded action or defense is brought or maintained in bad faith, vexatiously, wantonly, or for oppressive reasons. But only in exceptional cases and for dominating reasons of justice can the exercise of the power by the district court be justified."
6 J. Moore, W. Taggart J. Wicker, Moore's Federal Practice ¶ 54.77[2] (2d ed. 1983). The cases cited by the Supreme Court inHall readily fall within this rule and can truly be described as exceptional.
In Newman v. Piggie Park Enterprises, 390 U.S. 400,88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), plaintiffs sued to enjoin racial discrimination at eating establishments, and the Supreme Court found "respondents interposed defenses so patently frivolous that a denial of counsel fees to petitioners would be manifestly inequitable." Id. at 402, n. 4, 88 S.Ct. at 966.
In Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997,8 L.Ed.2d 88 (1962), the Court wrote: "[R]espondents were callous in their attitude, making no investigation of libellant's claim and by their silence neither *Page 1249 
admitting nor denying it. As a result of that recalcitrance, libellant was forced to hire a lawyer and go to court to get what was plainly owed him under laws that are centuries old." Id. at 528, 82 S.Ct. at 998.
In Bell v. School Board of Powhatan County, Virginia,321 F.2d 494 (4th Cir. 1963), in which plaintiffs sought to desegregate a public school system the court said:
 "Here we must take into account the long continued pattern of evasion and obstruction which included not only the defendants' unyielding refusal to take any initiative, thus casting a heavy burden on the children and their parents, but their interposing a variety of administrative obstacles to thwart the valid wishes of the plaintiffs for a desegregated education. To put it plainly, such tactics would in any other context be instantly recognized as discreditable. The equitable remedy would be far from complete, and justice would not be attained, if reasonable counsel fees were not awarded in a case so extreme."
Id. at 500.
In Rolax v. Atlantic Coast Line R. Co., 186 F.2d 473 (4th Cir. 1951), plaintiff union members sued the union. The court in that case said:
 "The justification here is that plaintiffs of small means have been subjected to discriminatory and oppressive conduct by a powerful labor organization which was required, as bargaining agent, to protect their interests. The vindication of their rights necessarily involves greater expense in the employment of counsel to institute and carry on extended and important litigation than the amount involved to the individual plaintiffs would justify their paying. In such situation, we think that the allowance of counsel fees in a reasonable amount as a part of the recoverable costs of the case is a matter resting in the sound discretion of the trial judge."
Id. at 481.
"In suits to enforce the rights of trust beneficiaries the court exercises discretion as to the allowance of counsel fees and costs out of the trust property or from other sources." G. Bogert, The Law of Trusts and Trustees, § 871 (2d ed. 1982). The trial court, exercising its discretion, apparently determined that the bank's conduct did not rise to the level of conduct described above and, therefore, that the award should not be made against the bank. The majority must have concluded that the court abused its discretion. I find no basis for reaching such a conclusion.
As the author of Martin II, I must point out that the opinion did not contain a finding that the bank acted in bad faith. Our affirmance was based in large part on the deference accorded the trial court's decision under the ore tenus doctrine and upon our conclusion that the evidence supported the finding that the bank was imprudent in its investment decisions. The opinion implicitly reaches the issue of bad faith, when it discusses the issue of whether the plaintiffs were entitled to compound interest on the judgment. Compound interest is a remedy available where the trustee is guilty of evil or corrupt intent, but that is not the only situation which will support such an award, and the opinion goes on and points out that the award of compound interest can be sustained in another situation that existed in this case. MartinII, 425 So.2d at 428, 429. If the bank had acted in bad faith, there would have been no reason to find another theory to support the award.
We have upheld the trial court's award of attorney's fees out of the "common fund" rather than against the trustee where the trustee was found to have a conflict of interest and arguably was involved in self-dealing. Birmingham Trust National Bank v.Henley, 371 So.2d 883 (Ala. 1979). In Henley one trustee was a bank. The trust assets were primarily stock in the bank. The bank sought to reorganize and in the process merge with a newly formed bank. As a result, the trust assets were to be sold. The bank was required to disclose information to an appraiser so that a price for the stock could *Page 1250 
be determined. The bank failed to make a complete disclosure, and as a result the trust assets were undervalued. The bank was also the buyer of the trust assets. As buyer of the trust assets, it would have liked a low valuation. As trustee, it should have sought a high valuation. Clearly the bank had a conflict of interest. The failure to disclose information affecting valuation was a breach of the trustee's fiduciary duty. The trial court awarded plaintiff's attorney fees out of a common fund. On appeal this Court affirmed that award. I do not think the finding of imprudent investment by the trustee in this case, in light of the result in Henley, supports a decision to have the trustee bank pay plaintiffs' attorney's fees. Therefore, I would affirm the trial court's award of attorney's fees payable out of the common fund.
Finally, if the majority of this Court believes that under the facts of this case the defendant should be compelled to pay the plaintiffs' attorney's fee, they should recognize that they are making new law rather than applying current law.
MADDOX, J., concurs.
[1] It should also be recognized that while Hall sets out the "bad faith" exceptions which justify an award of attorney fees against an opponent in equity cases, the Court held that the award inHall was justified under the authority of Mills v. Electric AutoLite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).Mills involved a situation where the plaintiff's action conferred a substantial benefit on the members of a class. Admittedly, it was also a situation where no fund actually came into existence as a result of the suit and the award was made against the corporate defendant on the theory that the cost of litigation would then be spread among the plaintiff shareholders who benefited from the suit. See also, Shimman v. International Unionof Operating Engineers, Local 18, 744 F.2d 1226 (6th Cir. 1984), for an excellent discussion of Hall and the "bad faith" exception.