**Howard DYER, Jr. and Sam Valencino,
Plaintiffs,**

**v.**

**Paul C. LOVE et al., Defendants.**

**No. GC 6452-S.**

United States District Court
N. D. Mississippi,
Greenville Division.

Dec. 30, 1969.

Philip Mansour, Martin Kilpatrick, Greenville, Miss., for plaintiffs.

Edward J. Bogen, of Bogen, McGough & Bogen, J. A. Lake, of Lake, Tindall & Hunger, George H. Slade, Greenville, Miss., for defendants.

## OPINION OF THE COURT

ORMA R. SMITH, District Judge.

The complaint herein was filed September 14, 1964. The plaintiffs, Emmet Hardy, Howard Dyer, Jr. and Sam Valencino were, at that time, adult resident citizens, taxpayers and qualified voters of the Third Supervisor's District of Washington County, Mississippi. The defendants included those persons who, at that time, constituted the Board of Supervisors of Washington County, Mississippi. The complaint seeks to correct malapportionment of the five districts of the county for the election of members of

the board of supervisors. On behalf of themselves and all other residents of the populous third district, plaintiffs allege that population disparities among the five districts, each of which elects one member of the board, constitute invidious discrimination against residents of the third district in violation of the Fourteenth Amendment. Plaintiffs invoke the provisions of 42 U.S.C. §§ 1983 and 1988. Jurisdiction is alleged under 28 U.S.C. § 1343(3).

The complaint states two grounds of relief: (1) That the supervisor districts of Washington County are malapportioned and thus dilute the rights of voters in the third district in which plaintiffs reside; (2) That § 2870 Mississippi Code, Annotated, 1942, which provides for an election on the question of redistricting the county, upon the petition of twenty-five percent of the qualified electors of a county, is, itself, unconstitutional because of the burden it places on constitutional rights. For reasons hereafter made apparent, it is not proper or necessary for the Court to consider the second ground for relief set forth in the complaint.

The complaint seeks an order of the Court holding void the present districting of the county, and an injunction commanding defendants to submit a districting plan in conformity to constitutional standards; and a redistricting of the county for the election of members of the board of supervisors, should defendants fail to submit to the Court a plan designed to meet constitutional standards.

The plaintiffs filed an application for the creation of a Three-Judge Court to hear the cause pursuant to the provisions of 28 U.S.C. §§ 2281 and 2284. On September 17, 1964, a Three-Judge Court consisting of Circuit Judge Walter P. Gewin and District Judges W. Harold Cox and Claude F. Clayton, was constituted to hear the case.

A brief summary of the procedural history of the case is necessary to be given at this point for a proper understanding of this opinion.

On November 18, 1964, defendants filed a motion to dismiss the complaint alleging: (1) Lack of jurisdiction over the subject matter, (2) Failure to exhaust administrative remedies, (3) A plan and adequate remedy at law, and (4) Failure to state a cause of action upon which relief could be granted. The motion to dismiss was overruled on March 29, 1965.

On April 7, 1965, defendants filed an answer and on April 20, 1965, the parties filed a stipulation to be used as evidence and waived a hearing for the purpose of taking any further evidence in the case.[1]

[1]. The stipulation is as follows:

### "STIPULATION OF FACTS

Counsel for complainants and defendants hereby stipulate that the following is a true and accurate statement of the facts pertinent to this cause and agree that this stipulation be introduced as evidence herein. Counsel hereby waive a hearing for the purpose of taking evidence.

1.

Complainants, Emmet Harty, Howard Dyer, Jr. and Sam Valencino, are all adult resident citizens, taxpayers and qualified electors of the Third Supervisors District of Washington County, Mississippi, and under the provisions of 28 USCA Section 2201, are entitled to and do sue on behalf of themselves and all persons similarly situated in said district.

2.

The defendants, W. P. Powers, M. H. Rich, Sr., Jeff Davis, Herman Caillouet and Fred Neal were elected according to the election laws of the State of Mississippi in force in 1963 and are now the acting members of the Board of Supervisors of Washington County, Mississippi. Each of the above defendants was elected solely by the qualified electors of their respective districts.

3.

That according to the 1960 Federal Census, the population of each district of Washington County, Mississippi, is as follows:

|  | County | First Dist. | Second Dist. | Third Dist. | Fourth Dist. | Fifth Dist. |
|---|---|---|---|---|---|---|
| Population | 78,153 | 2,605 | 3,016 | 49,451 | 14,801 | 8,280 |
| Percentage of Population |  | 3.33% | 3.98% | 63.19% | 18.91% | 10.59% |

4.

The assessed valuation of all property in Washington County, Mississippi is approximately 65 million dollars and of this 42 million dollars or 63% is located within the Third Supervisors District of Washington County, Mississippi.

5.

That the present districting of Washington County, Mississippi, was made pursuant to the provisions of Section 2870 of the Mississippi Code of 1942. It is not based upon population or upon any other admitted factor.

6.

The Board of Supervisors of Washington County, Mississippi and of every county in Mississippi has the authority alleged in paragraph 9 of the complaint. They are the governing body of the county and control the county government, including the levying of taxes and the expenditure of tax money.

7.

That the present Board of Supervisors has been requested by a Citizen's Committee of fifty members appointed by the Mayor of the City of Greenville pursuant to a resolution adopted by the City Council of Greenville, Mississippi, for that purpose, to redistrict themselves but notwithstanding the efforts of the Citizen's Committee and its repeated requests, the defendants have not redistricted themselves. No petition for redistricting bearing the signatures of 25% of the qualified electors has ever been filed with said Board. The Board of Supervisors has never granted any petition thus filed with it for redistricting and has never taken any action toward redistricting the county.

8.

All parties hereto agree that the case be submitted on the foregoing stipulation of facts and the briefs heretofore filed in this Court."

On June 14, 1965, the Three-Judge Court entered an order staying any action in the cause for a period of one year so that the plaintiffs might pursue the statutory remedy provided under § 2870 of the Mississippi Code, Annotated, 1942. The Court refrained from deciding the issue of jurisdiction at that time.

On June 28, 1966, at the request of the Court, the parties filed a joint statement to the effect that no action had been taken by any of the parties during the interim period of one year and that no further stipulation of fact was necessary. In the joint statement the parties further stated that during the preceding year one of the plaintiffs, Emmet Hardy, had passed away and the parties requested that the action proceed in favor of the surviving plaintiffs.

On August 10, 1966, plaintiffs filed a motion for leave to file amended pleadings to seek an allowance of reasonable attorney fees in the case. A careful search of the record does not reveal that an order on the motion has been entered.

On September 28, 1966, a majority of the Three-Judge Court, District Judge Cox, dissenting, issued an opinion and entered an order in the case dissolving the Court and directing that the cause proceed before a district court of one judge.

After considering the case on its merits, Judge Clayton entered an order, which the Court accepts and adopts as the law of the case. Judge Clayton's opinion and order are complete, clear and concise, and leaves the Court with only the question of the manner in which it is to be implemented. Judge Clayton's opinion and order does not deal with the amendment proposed by plaintiff which seeks the allowance of attorney fees for their attorney, to be taxed as a part of the costs of the case. This question remains for disposition.

The order entered on the merits of the case, dated September 28, 1966, directed defendants to prepare and submit to the Court for approval a proposed plan for the division of the county into five districts for election of members of the Board of Supervisors, the boundaries of which were to be so drawn as to achieve as nearly as practicable equality of population among the districts. The order also provided that plaintiffs should file a reply to the proposal of defendants, expressing their objections of law and facts, if any, to said proposals, or their concurrence therewith. The Court retained jurisdiction of the case for all purposes.

Thereafter, on October 11, 1966, in compliance with the Court's order, defendants presented to the Court a proposal to redistrict the county into five districts for the election of members of the board of supervisors of the county; supporting the proposal with maps to delineate the boundaries of the proposed districts. The proposal stated specifically that the Board of Supervisors did not desire to adopt the provisions of House Bill 223, of the Mississippi Legislature approved May 27, 1966, granting authority to boards of supervisors in the state to call for the election of its members at elections in which all qualified voters of the county could participate, but retaining residency requirements of the members in order to serve on the board.[2]

The plaintiffs filed objections to the proposal of defendants, on October 21, 1966, and tendered to the Court a proposal of their own, supported by an appropriate map delineating the boundaries of the proposed districts.

Judge Clayton notified the parties on December 13, 1966 that he intended to delay the final disposition of the case, until the Supreme Court of the United States acted upon certain cases then pending in the court, which he felt would control the disposition of the case sub judice.

---

2. This House Bill amended § 2870, of Mississippi Code, 1942, Annotated. A full discussion of this section and the 1966 amendment will be made in a later part of this opinion.

On May 29, 1967, defendants filed a motion seeking permission to withdraw the proposal previously presented by them and an order directing the election of members of the board of supervisors in the 1967 elections from the county at large each candidate to be a resident of the districts as presently existing, which such candidate proposed to represent.[3]

The Supreme Court of the United States decided the case of Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 on May 22, 1967. In light of the *Dusch* case, on June 6, 1967, Judge Clayton entered an order requiring the defendants to show cause at a time and place designated in the order why the board of supervisors' election for Washington County should not be held on an at-large basis with the candidates from each of the beats of the county, as then constituted, to be a resident of their respective beats.

At the time and place designated, with all parties before the Court in person or by counsel, the Court entered an order requiring defendants to direct that all candidates for nomination and election as supervisors of Washington County for the year 1967 should be bona fide resident free-holders of their respective beats or supervisors' districts from and for which they should run, as such beats or districts, were then constituted, and further that the candidates should be voted upon by the county at large and their nomination and election determined as provided by law on a county at-large basis.

The order expressly stated that it was a temporary order and was being entered solely for the purpose of providing for the 1967 elections of the county, and that all issues in the cause were reserved for final disposition by the Court.

After the 1967 elections, an order was entered herein to substitute successors in office of the original defendants, members of the board of supervisors of the county.

On February 14, 1969, plaintiffs filed a motion seeking an order of the Court enjoining defendants from using county funds to pay counsel expense in the case. This motion was denied at the hearing of the case on its merits at Greenville, Mississippi, on September 8, 1969.

On February 20, 1969, defendants filed a motion with the Court for an order permitting them to adopt the provision for election of supervisors at-large, as provided in House Bill 223, Laws of 1966, which amended § 2870, Mississippi Code, 1942, Annotated.

The cause was submitted to the Court on its merits at a hearing held on September 8, 1969, at Greenville, Mississippi. At the conclusion of the hearing, after receiving oral arguments, the Court requested counsel to submit briefs on two points, namely:

1) Whether an attorney fee should be allowed for plaintiffs' attorney, and

2) Whether or not the duties of each member of the board of supervisors of the State of Mississippi within each member's respective district, are substantial so that an at-large election of the individual members of the board of supervisors would not meet constitutional standards.

Counsel have submitted excellent briefs, which have been given careful consideration.

The main issue in the cause is whether at-large elections of members of the board of supervisors of the county are permissable under Mississippi constitutional and statutory law, and, if so, will such elections satisfy the one man, one vote principle of Reynolds v. Sims, 1964, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, which was extended to county

---

3. The year 1967 was a regular general election year, in which all state and county officials, other than the judiciary, were to be elected. Party primary elections are held during the month of August of the year in which general elections are held. (§ 3109, Miss.Code 1942, Annotated) The general elections are held in November of such years. (§ 252, Mississippi Constitution of 1890)

boards, such as the defendant board, by Avery v. Midland County, 1968, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45.

At the time of the entry of the order by Judge Clayton directing at-large elections in the 1967 general election, the Mississippi Legislature had adopted House Bill 223, Laws 1966, supra, and the Supreme Court of the United States had rendered its decision in the case of Dusch v. Davis, supra. Judge Clayton's order expressly recited that it issued in light of the *Dusch* case.

After the entry of this order the Mississippi Legislature further amended Section 2870, Mississippi Code, 1942 Annotated, by House Bill 102, Ch. 564, Laws of 1968, adopted May 27, 1968. The latter amendment changed, to some extent, inter alia, the manner in which the alternative method of at-large elections might be adopted by county boards of supervisors.

In Mississippi, it is a generally accepted rule of law that the powers of a county board of supervisors are strictly limited to those conferred by statute.

Adams v. First National Bank of Greenwood, 60 So. 770, 103 Miss. 744; State ex rel. Patterson v. Board of Supervisors of Warren County, 233 Miss. 240, 102 So.2d 198, adhered to 239 Miss. 671, 123 So.2d 695, corrected 233 Miss. 240, 125 So.2d 91. Boards of supervisors have no implied powers. Tallahatchie Drainage District No. 1 v. Yocona-Tallahatchie Drainage District No. 1, 148 Miss. 182, 114 So. 264.

Boards of supervisors in Mississippi are created by the Constitution of the State of Mississippi, of 1890, § 170.[4]

The Mississippi Legislature implemented the constitutional provision by providing for the manner in which each county should be divided into districts. Mississippi Code, 1942, § 2870.[5] Before the May 27, 1966 amendment this section of the code provided that each county should be divided into five (5) districts, "with due regard to equality of population and convenience of situation for the election of members of the boards of supervisors", but that the districts then existing should continue until changed.

---

4. Section 170 of the Constitution provides: "Each county shall be divided into five districts, a resident freeholder of each district shall be selected, in the manner prescribed by law, and the five so chosen shall constitute the board of supervisors of the county, a majority of whom may transact business. The board of supervisors shall have full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe, and perform such other duties as may be required by law; provided, however, that the legislature may have the power to designate certain highways as 'state highways,' and place such highways under the control and supervision of the state highway commission, for construction and maintenance. The clerk of the chancery court shall be the clerk of the board of supervisors."

5. The part of this section pertinent to the issues here are: "Each county shall be divided into five (5) districts; with due regard to equality of population and convenience of situation for the election of members of the boards of supervisors, but the districts as now existing shall continue until changed. The qualified electors of each district shall elect, at the next general election, and every four (4) years thereafter, in their district, one member of the board of supervisors; and the board, by unanimous vote of all members elected or when so ordered by a vote of the majority of the qualified electors of the districts affected voting in an election as hereinafter provided, may at any time, except as hereinafter provided, change or alter the district, the boundaries to be entered at large in the minutes of the proceedings of the board.

"The board, upon the petition of twenty-five per cent (25%) of the qualified electors of the county, asking that the districts of the county be changed, or altered, and setting out in such petition the changes, or alterations desired, shall call a special election for a date which shall be not less than thirty (30), nor more than sixty (60) days from the date of the presentation of the petition to the assembled board. A majority of the qualified electors of the county shall determine the issue of such election." (As this section existed before the 1966 amendment)

The section provided that the districts might be changed and altered by the boards of supervisors, and established machinery by which this could be accomplished.

The 1966 amendment provided an alternate method for electing members of the boards of supervisors with all the qualified electors of the county being eligible to vote for each member of the board, but with the provision that each candidate for membership on the board must be a resident of the district which he proposes to represent.[6]

The Voting Rights Act of 1965, passed by the Congress of the United States became effective August 6, 1965.[7] The State of Mississippi is one of the states in the Union covered by the provisions of the Act. Section 5 of the Act provides:

"Whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure: Provided, That such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceeding if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, except that neither the Attorney General's failure to object nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure. Any action under this section shall be heard and determined by a court of three judges in

---

6. The pertinent part of this amendment is as follows:

"The board of supervisors of any county may adopt an order providing that all the qualified electors of the county shall be eligible to vote for each member of the board of supervisors but each candidate shall be a resident of the district which he proposes to represent; said order to be adopted and published in a newspaper having general circulation in the county at least twelve (12) months prior to the next general election wherein said supervisors are elected.

If twenty per cent (20%) of the qualified electors of the county shall present the board of supervisors with a petition objecting to such alternate method within sixty (60) days after the adoption and final publication of any such alternative method, then the board of supervisors shall call an election after publishing notice thereof in a newspaper published in the county

* * * once a week for at least three (3) weeks prior to such election and the question on the ballot shall be whether the entire electorate of the county shall be required to vote for the members of the board of supervisors at large, or whether the qualified electors in the said districts shall vote for the candidate in that district. If the majority of those voting vote that all the qualified electors shall be eligible to vote for candidates in each district, then thereafter all elections for members of boards of supervisors shall so be held. If not, members of the boards of supervisors shall continue to be elected by the electorate of their respective districts and the board of supervisors shall not be permitted to adopt this alternative method of electing members of boards of supervisors again until two (2) years have transpired."

7. 42 U.S.C. § 1973 et seq. (1964 ed. supp. I) Pub.L. 89–110, 79 Stat. 437 et seq.

accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court. Pub.L. 89–110, § 5, Aug. 6, 1965, 79 Stat. 439."

The Supreme Court of the United States considered the aforesaid 1966 amendment to § 2870, Mississippi Code of 1942, in Allen v. State Board of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed. 2d 1, decided March 3, 1969, and held that the State of Mississippi must follow the requirements of Section 5 of the Act (42 U.S.C. § 1973c) in securing approval for the 1966 amendment to § 2870, before the amendment can be implemented.

After the decision in *Allen,* the Attorney General of Mississippi submitted these amendments to § 2870 to the Attorney General of the United States. The Attorney General of the United States, by letter dated May 21, 1969, advised the Attorney General of Mississippi that an objection was interposed to their implementation.

So far as the Court is able to determine the objection of the Attorney General of the United States has not been withdrawn, nor has the State obtained a favorable declaratory judgment on the issue in the United States District Court for the District of Columbia.

Thus, the 1966 and 1968 amendments to § 2870 may not be implemented and are not presently in force. The defendants, as members of the board of supervisors of the county, do not have statutory power or authority to provide for or order at-large elections of its members. These amendments to § 2870 may not be considered by the Court in reaching a decision in the case.

With the constitutional and statutory law of the State of Mississippi in the posture above mentioned the Court must consider the effect of Reynolds v. Sims, supra, and its progeny.[8]

The principle of Reynolds v. Sims was extended by Avery v. Midland, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45, decided April 1, 1968, to units of local government, which held that petitioner, as a resident of Midland County, Texas, had a right to a vote for the Commissioners Court of the County of substantially equal weight to the vote of every other resident, 390 U.S. 476, 88 S.Ct. 1114.

The problem in the case sub judice must be resolved on the principles enunciated in *Avery,* a Texas case. Commissioners Courts in Texas exercise governmental functions similar to those exercised by boards of supervisors in Mississippi.[9]

8. In *Reynolds* the court said:
"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise". (377 U.S. p. 555, 84 S.Ct. p. 1378, 12 L.Ed.2d pp. 523–524)
"Full and effective participation by all citizens in state government requires, therefore, that each citizen have an equally effective voice in the election of members of his state legislature." (377 U.S. p. 565, 84 S.Ct. p. 1383, 12 L.Ed.2d p. 529)

9. In *Avery* the court described the functions of the Commissioners Court as follows:
"The Commissioners Court is assigned by the Texas Constitution and by various statutory enactments with a variety of functions. According to the commentary to Vernon's Texas Statutes, the court:
'is the general governing body of the county. It establishes a courthouse and jail, appoints numerous minor officials such as the county health officer, fills vacancies in the county offices, lets contracts in the name of the county, builds roads and bridges, administers to county's public welfare services, performs numerous duties in regard to elections, sets the county tax rate, issues bonds, adopts the county budget, and serves as a board of equalization for tax assessments.'
"The court is also authorized, among other responsibilities, to build and run a hospital, Tex.Rev.Civ.Stat.Ann., Art. 4492 (1966), an airport, id., Art. 2351 (1964), and libraries, id., Art. 1677 (1962). It fixes boundaries of school districts within the county, id., Art. 2766 (1965), may establish a regional public

The Supreme Court decided the *Dusch* case, supra, and Sailors v. Board of Education of Kent County, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650, before considering the *Avery* case, supra. In making reference to these two cases, the court said:

"The Court is aware of the immense pressures facing units of local government, and of the greatly varying problems with which they must deal. The Constitution does not require that a uniform straitjacket bind citizens in devising mechanisms of local government suitable for local needs and efficient in solving local problems. Last Term, for example, the Court upheld a procedure for choosing a school board that placed the selection with school boards of component districts even though the component boards had equal votes and served unequal populations. Sailors v. Board of Education of Kent County, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967). The Court rested on the administrative nature of the area school board's functions and the essentially appointive form of the scheme employed. In Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed. 2d 656 (1967), the Court permitted Virginia Beach to choose its legislative body by a scheme that included at-large voting for candidates, some of whom had to be residents of particular districts, even though the residence districts varied widely in population.

"The Sailors and Dusch cases demonstrate that the Constitution and this Court are not roadblocks in the path of innovation, experiment, and development among units of local government. We will not bar what Professor Wood has. called 'the emergence of a new ideology and structure of public bodies, equipped with new capacities and motivations * * *.' R. Wood, 1400 Governments, at 175 (1961). Our decision today is only that the Constitution imposes one ground rule for the development of arrangements of local government: a requirement that units with general governmental powers over an entire geographic area not to be apportioned among single-member districts of substantially unequal population." (390 U.S. 485, 486, 88 S.Ct. 1120–1121)

The action in *Dusch* was instituted by electors of five boroughs of the City of Virginia Beach, Virginia and challenged the constitutionality under the one man,

---

housing authority, id., Art. 1269k, § 23a (1963), and determines the districts for election of its own members, Tex.Const., Art. V, § 18."

The manifold constitutional and statutory duties of the boards of supervisors in Mississippi have been fully and clearly set forth in excellent and exhaustive briefs submitted by counsel in the case sub judice. These duties are aptly enumerated and defined in Judge Clayton's scholarly opinion rendered in this case, September 28, 1968, as follows:

"In Mississippi, a county board of supervisors is a constitutional agency of government, Mississippi Constitution of 1890, § 170, which has been granted many powers and responsibilities by the legislature. See, e. g., Mississippi Code Annotated 1942 (Recompiled) §§ 2870–3019. Such boards have legislative, executive and quasi-judicial powers, duties and responsibilities. They have full jurisdiction over roads, bridges and ferries. They equalize ad valorem assessments for taxes for the whole county

and fix the tax levies for the county, for supervisors districts and for county schools. They may acquire lands by purchase or by eminent domain for county purposes and may sell county property. They authorize and approve expenditures of public funds for a long catalogue of governmental purposes. They issue bonds for the county, for its districts and schools by their own action, as the result of an election or, in some instances, in response to petition. They, in effect, are purchasing agents for the county and many of its offices and agencies. They have zoning responsibilities, promotional authority, and subsidizing powers for certain activities and undertakings. They can issue subpoenas and punish for contempt. Its members are conservators of the peace and individually possess the judicial powers of a justice of the peace. In short, they are, to a large extent, the government of their county. And, significantly, a majority of such a board may bind the county."

one vote principle of the city's consolidation plan, under which the city's eleven councilmen were elected at large, but each of seven of the councilmen was required to reside, respectively, in each of the city's seven boroughs. The district court upheld the plan, the United States Circuit Court of Appeals for the Fourth Circuit reversed, and the Supreme Court held that the resident requirement of the plan did not render it unconstitutional.

The first impression of the Court is that *Dusch* justifies a holding in the case sub judice that the at-large voting proposal of defendants meets constitutional standards.

The opinion in *Dusch* reflects that in 1963 the City of Virginia Beach, Virginia consolidated with Princess Ann County, Virginia, which was both rural and urban; and a borough form of government was adopted. In the consolidation, seven boroughs were formed, one corresponded to the boundaries of the former city, and six to the boundaries of the six magisterial districts. Three of the boroughs are primarily urban, three primarily rural and one, the borough of Virginia Beach, is primarily tourist. The consolidation plan was effected pursuant to Virginia law and the charter embodied in the plan was approved by the Legislature.

Electors of five boroughs, having exhausted attempts to obtain relief in the state courts, instituted an action in the Federal District Court claiming that the consolidation plan in its distribution of voting rights violated the principle of Reynolds v. Sims, supra. The District Court held the original allocation plan invalid as denying voters equality and stayed further proceedings to allow the city an opportunity to seek a charter amendment at the 1966 session of the State Legislature. The charter was amended to provide for the Seven-Four Plan, which became the object of the decision of the Supreme Court. Under the amended charter the council is composed of eleven members, four of which are elected at large without regard to

residence, seven are elected by the voters of the entire city, one being required to reside in each of the seven boroughs. Pursuant to leave of the District Court, plaintiffs filed an amendment to challenge the constitutionality of the Seven-Four Plan. The District Court approved the plan. The Court of Appeals reversed, and an appeal was perfected to the Supreme Court.

Those portions of the court's opinion bearing upon the question before the court in the case sub judice are:

"The Seven-Four Plan makes no distinction on the basis of race, creed, or economic status of location. Each of the 11 councilmen is elected by a vote of all the electors in the city. The fact that each of the seven councilmen must be a resident of the borough from which he is elected, is not fatal. In upholding a residence requirement for the election of state senators from a multi-district county we said in Fortson v. Dorsey, 379 U.S. 433, 438, 85 S.Ct. 498, 501, 13 L.Ed.2d 401, 404:

'It is not accurate to treat a senator from a multi-district county as the representative of only that district within the county wherein he resides. The statute uses districts in multi-district counties merely as the basis of residence for candidates, not for voting or representation. Each district's senator must be a resident of that district, but since his tenure depends upon the county-wide electorate he must be vigilant to serve the interests of all the people in the county, and not merely those of people in his home district; thus in fact he is the county's and not merely the district's senator.'

"By analogy the present consolidation plan uses boroughs in the city 'merely as a basis of residence for candidates, not for voting or representation.' He is nonetheless the city's, not the borough's councilman. In Fortson there was substantial equality of population in the senatorial districts, while here the population of the

boroughs varies widely. If a borough's resident on the council represented in the fact only the borough, residence being only a front, different conclusions might follow. But on the assumption that Reynolds v. Sims controls, the constitutional test under the Equal Protection Clause is whether there is an 'invidious' discrimination. 377 U.S. at 561, 84 S.Ct. at 1381, 12 L.Ed.2d at 527." (387 U.S. 115, 87 S. Ct. 1555, 18 L.Ed.2d 659)

After careful analysis of the decisions in *Dusch* and *Fortson,* supra, the Court is of the opinion that the at-large voting proposal of defendants, on the record of this case, passes constitutional muster. This conclusion, however, does not solve the problem.

In *Dusch* the City of Virginia Beach was authorized by a charter granted to the city by the Virginia Legislature to inaugurate the plan. In *Fortson* the voting and representation plan in question had been previously authorized by the Georgia Legislature. In the case sub judice the defendant board is not presently authorized by effective state statute to implement an at-large voting scheme within the county. And, as has been hereinbefore observed, county boards of supervisors cannot exceed the powers granted to them by law.

Mississippi law invests boards of supervisors with the authority to change or alter the districts of the county. § 2870 Mississippi Code, 1942, Annotated.

■ It is the opinion of the Court that defendant board should be required to change and/or alter the districts of the county, in such manner as will provide equality of population among the districts as of the present time. At one stage in the progress of this case defendant board proposed a plan to redistrict the county, but later withdrew the plan, and plaintiffs have submitted a proposed plan. The responsibility for changing and altering the districts rests upon defendant board, and the Court feels that the board should accept this responsibility and come forward with a plan which meets constitutional standards.[10] Should defendants fail to come forward with such a plan, the Court will consider the plan proposed by plaintiffs. Accordingly, an appropriate order will be entered to carry into effect the holding of the Court in this regard.

The next and final question for determination is the propriety of the allowance of an attorney's fee for plaintiffs' attorney, to be taxed as a part of the cost. This allowance is vigorously opposed by defendants.

Plaintiffs are adult resident citizens of the Third District of Washington County. This district, according to 1960 Federal Census, is inhabited by 49,451 people. The population of the county, according to the 1960 census, is 78,153. Thus, the inhabitants of the Third District compose 63.19% of the entire population for the county. At the time of the filing of this action the inhabitants of the Third District voted for and elected one member to the five member board of supervisors, which board is the governing body of the county. The First District of the county had a population of 2,605 or 3.33% of the population of the county. The Second District had 3,016 inhabitants or 3.98%, the Fourth District 14,801 inhabitants or 18.91% and the Fifth District 8,280 or 10.59%.

The wide population disparities existed among the districts for the election of county supervisors in the county.

Before plaintiffs filed this action the mayor of the City of Greenville, the largest city in the county, pursuant to a resolution adopted by the City Council, appointed a Citizen's Committee of fifty members to petition the board of supervisors, to redistrict themselves, under the pertinent Mississippi statutes. The board refused to accede to this request. The Committee, having failed to achieve

10. In redistricting the board of supervisors should consider the cases of Kirkpatrick v. Preisler, 1969, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519, and Wells v. Rockefeller, 1969, 394 U.S. 542, 89 S.Ct. 1234, 22 L.Ed.2d 535.

its goal, disbanded and abandoned the project.

Plaintiffs, as interested citizens, arranged with their attorney to file a suit against the board of supervisors to compel the board to redistrict themselves and afford plaintiffs, and other members of the body of citizens of which they were members, the constitutional right to a vote for members of the board of supervisors of the county which was not diluted or debased by population disparities. The plaintiffs did not agree or obligate themselves to pay their attorney a fee for his services. Neither did the attorney expressly agree to perform the services without compensation.

It is unnecessary to discuss in detail in this opinion the many duties which plaintiffs' attorney has been called upon to perform in the presentation of this case. The record vividly reflects that each issue submitted to the Court has been hotly contested by both parties.

The district courts in Mississippi in at least three instances have been requested to allow an attorney's fee for plaintiff's attorney in redistricting cases involving boards of supervisors in the state.

Such a request was made to this Court in Sheffield et al. v. Robinson, et al, EC 6745–S. The Court denied the allowance and in doing so said:

"In addition to the reapportionment of the Board of Supervisors, the plaintiffs in this action seek to recover their attorney's fees. Traditionally, each party bears the costs of his attorney's fees. A request that attorney's fees be taxed as costs to the opposing party is addressed to the sound discretion of the District Court. Just as in Damon v. Lauderdale County Board of Supervisors, et al., 254 F.Supp. 918 (S.D.Miss.1966), this Court does not believe that it is proper to allow the recovery of attorney's fees in a suit of this nature on facts as reflected by this record. Therefore, the motion that attorney's fees be taxes as costs is denied."

The record in *Sheffield* did not reveal that plaintiffs or any other interested citizen had petitioned the board of supervisors for relief before the filing of the suit. In addition the record reflected very little activity on the part of the plaintiffs or their attorneys.

Damon v. Lauderdale County Board of Supervisors, et al., 254 F.Supp. 918 (S.D. Miss.1966), was decided by a Three-Judge Court. The Court was composed of Circuit Judge Coleman, and District Judges Russell and Cox. The Court refused to allow a fee for plaintiffs' attorneys as a part of the cost of suit. It is apparent that the Court regarded the allowance of such a fee as discretionary with the Court. The Court said in its opinion "It is the judgment of the Court that a reasonable attorneys' fee should not be awarded in this case and the motion therefor will be overruled".

In Martinolich v. Dean, 256 F.Supp. 612 (S.D.Miss.1966), District Judge Harold Cox of the Southern District of Mississippi, a member of the Three-Judge Court in *Damon*, on June 14, 1967, entered an order allowing an attorney's fee to be taxed against the defendant board as a part of the court costs in the case. The entry of this order by Judge Cox sustains the Court's interpretation of the *Damon* decision.

The three cases above mentioned confirm the Court's opinion that the allowance of an attorney fee is within the sound discretion of the Court, to be exercised on the peculiar facts of each case.

Defendants rely heavily on Judge Clayton's decision in Bell v. Alamatt Motel, D.C., 243 F.Supp. 472. *Bell* involved an action brought by seven Negro plaintiffs pursuant to 42 U.S.C. § 2000a–3(a) (§ 204(a) of the Civil Rights Act of 1964) for injunctive relief against racially discriminatory practices by defendants, the owners and operators of a motel and restaurant, in violation of statute. The applicable statute provides that the Court "*May* allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Judge Clayton, exercising his sound discretion, would not allow an attorney's fee to plaintiffs, who prevailed in the action. Judge Clayton wrote a very able opinion in which he reviewed the power and right of a Federal Court to allow an attorney's fee to the prevailing party in a pending action, to be taxed as a part of the costs of suit. When the opinion is considered in its entirety it is clear that in the final analysis Judge Clayton, in his discretion, declined to award an attorney's fee under the facts peculiar to the case which he had under consideration. That such was his view of the case is demonstrated by the Court's reference to Bell v. School Board of Powhatan County, 4 Cir. 1963, 321 F.2d 494, in which the Fourth Circuit reversed the district court's denial of an attorney's fee to successful plaintiffs in a school desegregation case. The Fourth Circuit held that such a denial was an abuse of discretion under the circumstances.

Defendants argue that an award of attorney's fee should not be made against them because they have not been arbitrary or defiant; that they always acted in good faith in complying with the orders of the Court; and that until the decision was rendered in Avery v. Midland County, on April 1, 1968, there was a lingering doubt that the principles of Reynolds v. Sims extended to units of local government, such as the Board of Supervisors of Washington County. It was recognized in *Avery* that its decision had been forecast by almost every court which had addressed itself to the question. See footnote three (3), 390 U.S. 479, 88 S.Ct. 1114. The cases cited in this footnote extends back to 1965. It must have been anticipated by all concerned, after the decision in Reynolds v. Sims, supra, rendered in 1964, that extension of the principle enunciated therein would be extended to units of self government, when the Supreme Court was called upon to consider the question.

It would unduly lengthen this opinion to review the ardent manner in which the defendant board has resisted the action by plaintiffs.

In *Bell*, supra, Judge Clayton buttressed the denial of an attorney's fee on several facts peculiar to the case. For one, Judge Clayton developed through questions propounded by him to the attorney for plaintiffs that plaintiffs had not agreed to pay the attorney a fee for his services, or his expenses in the case. Judge Clayton then reasoned that an allowance of fees and expenses would be a windfall for plaintiffs who could collect the fee and expense, and would be under no obligation to pay the money over to the attorney, since plaintiffs had not obligated themselves to do. The Court does not follow Judge Clayton's line of reasoning since the equity power of the Court could have been utilized to direct that the attorney's fee and expenses be paid to the attorney, rather than to plaintiffs. In the case sub judice, the same situation exists, as plaintiffs have not obligated themselves to pay their attorney a fee in the case.

In considering the allowance of an attorney's fee the Court must keep in mind the refusal of the members of the board of supervisors to redistrict themselves, and the necessity created thereby for the class of citizens of the county who were not being afforded their constitutional right to a full and unfettered vote, to bring this action.

One other reason advanced by Judge Clayton in *Bell* was the minimal amount of work required of the attorney for plaintiffs in order to secure equitable relief. As has been detailed above, the facts in the case sub judice are entirely different in this regard to the circumstances existing in *Bell*.

There are federal statutes which provide for the allowance of attorney fees to successful parties. Some of these carry a command that the allowance must be made. Others provide that the allowance is discretionary. A number of

these statutes are shown in the footnotes.[11]

There is no provision in the federal statutes, which has been brought to the Court's attention, that provides for the allowance of attorney's fees for the prevailing party in school cases. If such fees are to be allowed in such cases, as in the case sub judice, they must be made in the exercise of the equity powers of the Court. Sprague v. Ticonic National Bank, 1939, 307 U.S. 161, 57 S.Ct. 777, 83 L.Ed. 1184. Exceptional circumstances are necessary to justify such an award. Arcambel v. Wiseman, 1796, 3 U.S. 306, 3 Dall. 306, 1 L.Ed. 613.

An award of attorney's fees in school cases has been made in many district court cases, as is illustrated by the case of Bell v. School Board of Powhatan County, Virginia, supra. See also, cases cited in the 1968 Cumulative Annual Pocket Part, 25 Modern F.Pr.Dig. Federal Civil Procedure, § 2737, at pages 135 et seq.[12]

The facts in the case sub judice brings the case squarely within the rule stated in *Bradley* (Footnote 11).

■ The Court finds that the bringing of this action was made necessary by the board of supervisors' unreasonable and obstinate refusal to redistrict itself. The decision in *Avery* (1968) was clearly forecast by Reynolds v. Sims (1964). After this suit had been filed, defendants vigorously opposed the efforts of plaintiffs to obtain for themselves and the members of the class represented by them, the right to a vote for members of the board of supervisors of substantially equal weight to the vote of every other resident of the county.

The Court finds (1) that the allowance of an attorney's fee for the attorney representing plaintiffs, to be taxed as a part of the costs in this case, is within the sound discretion of the Court; and (2) that the facts and circumstances of the case justify an allowance of such a fee.

The determination by the Court of the amount of the fee should be pretermitted until the final judgment is entered herein, providing for redistricting the county.

The Court must make it plain, however, that the allowance of an attorney's fee herein is not to be considered as a precedent for the allowance of fees in other cases of similar import. Every case must stand upon its own bottom.

11. Examples of federal statutes granting authority for the award of attorney fees are listed in *Bell*, supra, as follows:
"Examples of federal statutes granting authority for the award of attorney's fees are the antitrust laws, 15 U.S.C. § 15; the communications act, 47 U.S.C. § 206; the copyright laws, 17 U.S.C. § 116; the Fair Labor Standards Act, 29 U.S.C. § 216(b); the Interstate Commerce Act, 49 U.S.C. §§ 8 and 908(b); the Merchant Marine Act, 46 U.S.C. § 1228; and the patent laws, 35 U.S.C. § 285." (243 F.Supp. 474).

12. The Fourth Circuit said in the case of Bradley v. School Board of the City of Richmond, Virginia, 345 F.2d 310, at page 321, a case which followed Bell v. School Board of Powhatan County, Virginia, supra, as follows:
"It is true that the original plaintiffs did obtain substantial relief in the District Court in the first trial, and it is true also, that we directed an award of attorneys' fees in Bell v. School Board of Powhatan County, Virginia, 4 Cir. 321 F.2d 494.
"It is only in the extraordinary case that such an award of attorneys' fees is requisite. In school cases throughout the country, plaintiffs have been obtaining very substantial relief, but the only case in which an appellate court has directed an award of attorney's fees is the Bell case in this Circuit. Such an award is not commanded by the fact that substantial relief is obtained. Attorney's fees are appropriate *only when it is found that the bringing of the action should have been unnecessary and was compelled by the school board's unreasonable, obdurate obstinacy.* Whether or not the board's prior conduct was so unreasonable in that sense was initially for the District Judge to determine.
Undoubtedly he has large discretion in that area, which an appellate court ought to overturn only in the face of compelling circumstances. (Emphasis provided)

The extent of the holding of the Court herein is that the allowance of an attorney's fee in this and similar cases is a matter which is within the sound discretion of the Court, to be exercised when the Court feels that justice and equity requires such an allowance.

An appropriate order is being entered by the Court.