Brenda K. MONROE et al., Plaintiffs-Appellants and Cross-Appellees,

v.

BOARD OF COMMISSIONERS OF the CITY OF JACKSON, TENNESSEE, Constituting the Board of Education or School Commissioners of Said City, et al., Defendants-Appellees and Cross-Appellants.

Nos. 71-1359, 71-1360.

United States Court of Appeals, Sixth Circuit.

Jan. 7, 1972.

260

Sylvia Drew, New York City, for
Brenda Kay Monroe, et al.; Avon N.
Williams, Jr., Nashville, Tenn., J. Em-
mett Ballard, Jackson, Tenn., Jack
Greenberg, James M. Nabrit, III, Nor-
man J. Chachkin, New York City, on
brief.

Russel Rice, Sr., Jackson, Tenn., for
Board of Commrs., City of Jackson, Ten-
nessee, etc., et al.; Rice & Rice, Jackson,
Tenn., of counsel.

Before PHILLIPS, Chief Judge, and
EDWARDS and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This is the third appearance of this
case before this Court. The continuing
controversy over the desegregation of
the public schools of Jackson, Tennessee,
originated in 1963 when the plaintiffs,
black students and their parents, filed
suit in the District Court for the West-
ern District of Tennessee. In August,
1963, the District Court approved a plan
submitted by the Board calling for insti-
tution of geographical attendance areas
for all schools over a five-year period,
but reserving power to the school to
"grant or require" student transfers to
schools outside their residence zones,
upon application or upon the initiative
of the school superintendent. 221 F.
Supp. 968 (W.D.Tenn.1963). In Sep-
tember of 1964, the plaintiffs filed a
motion for further relief which chal-
lenged the administration of this free
transfer provision and which also
charged that elementary school atten-
dance zones had been racially gerryman-
dered. The District Court held that the
Board had applied its transfer policy in
a discriminatory manner and ordered
that free transfers must be allowed
without regard to race, and observing
further that some of the elementary
school zones "appear to be gerryman-
dered," ordered the boundaries adjusted.
244 F.Supp. 353, 361 (W.D.Tenn.1965).
This Court affirmed except with respect
to the District Court's refusal to order
faculty integration, which is not here at
issue. 380 F.2d 955 (6th Cir. 1967).

A petition for certiorari to the Su-
preme Court was granted on the issue of
whether the school desegregation plan
failed to make reasonable provisions to
abolish the dual school system, and
whether the school board used a stand-
ard for assessing the plan which failed
to recognize its affirmative duty to dis-
establish the segregated school system.
On May 27, 1968, the Supreme Court re-

versed that part of the decision of this Court which affirmed the District Court's approval of defendant's geographical school zones with free transfers. The Supreme Court held that a free transfer provision which tends to delay the conversion from a segregated dual school system to a unitary, nonracial, nondiscriminatory school system is constitutionally impermissible. 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1967).

In August of 1968, the plaintiffs filed a motion for further relief based upon the Supreme Court decisions in this case and in Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968). The Board responded by submitting a plan containing the identical geographic zones drawn at the inception of this litigation, and which contained a free transfer provision, despite the fact that the Supreme Court decision had held invalid the use of free transfers in the Jackson City school system. On May 28, 1969, the District Court ordered the elimination of the free transfer provision, and ordered the revision of school zones to accomplish greater desegregation.

Following entry of that order, the Board requested a stay with respect to the elimination of the free transfer provision and the revision of the zones. The Court granted the motion with respect to the zones, but refused to stay the elimination of the free transfer provision. On June 19, 1970, the order of the District Court was affirmed by this Court. 427 F.2d 1005 (6th Cir. 1970).

One month later, the school board sought approval of an amended plan of desegregation for the 1970–71 school year which retained the identical zones which the District Court had ordered altered. The Board submitted alternative geographic zones for the junior and senior high schools, but no alternative zones for the elementary grades were provided. On July 30, 1970, the District Court approved the alternative zones for the 1970–71 school year, and directed the Board to seek the asistance of the Title IV Educational Opportunities Planning Center of the University of Tennessee in revising the elementary zones so as to promote further desegregation.

On December 15, 1970, the Title IV Center filed its recommendations. It concluded that geographic factors and residential housing patterns were such that no other zoning pattern "would be likely" to significantly alter the existing racial imbalance, adding that the District Court approved zones "are the best that can be drawn for the system." Nevertheless, it proposed some adjustments or alterations in the existing zones which admittedly differed very little from those then in use. The report then suggested two further alternative plans: (1) non-contiguous zoning might be utilized if school supported transportation could be instituted, or (2) adjacent schools might be paired and the boundary zones enlarged to encompass the new area. Several pairings were suggested, any of which would result in greater integration than is possible with the present method of zoning.

After consideration of the Center's alternatives, and after hearing the plaintiffs' request that the pairing alternative be adopted, the District Court ordered that the proposed zone changes be adopted. Those zone changes have been effectuated by the Board, and on this appeal no complaint is made as to that aspect of the decision. It is the Board's position that because those zone changes eliminated the last of Jackson's totally all-black schools, the system has been brought into compliance with Constitutional standards.

The plaintiffs contend that the District Court was obligated to adopt either the pairing or the non-contiguous zoning proposal of the Title IV Center because these alternative plans provided for greater desegregation than the zones adopted by the Court, and contend that the Board can meet its affirmative Constitutional duty only by utilization of the plan which more effectively than

any other accomplishes desegregation. This contention is based upon the opinion of the Supreme Court of the United States in Swann v. Charlotte Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1970), which was announced after the District Court's opinion in this case was filed, and upon two recent decisions from this Court: Robinson v. Shelby County Board of Education, 442 F.2d 255 (6th Cir. 1971), and Davis v. School District of Pontiac, 443 F.2d 573 (6th Cir. 1971).

The decision of the Supreme Court in Swann delineates guidelines which the Court decrees to be the standards of permissible remedial state action in disestablishing a state imposed system of segregated education, and holds that pairing, non-contiguous zoning, and the use of bus transportation are permissible tools to accomplish desegregation.

The plaintiffs rely upon the Davis and Robinson cases, supra, as holding that alternative plans providing for greater desegregation must be adopted in preference to less effective plans in order for a board to meet its affirmative Constitutional duty. Suffice it to here observe only that those cases are at least arguably distinguishable on their facts from the present case.

To the credit of all concerned, certainly including the District Judge, it is observed that at long last Jackson has made some very substantial progress toward the desegregation of its school system. For example, we note that although Jackson once maintained a dual school system, as of October, 1971, all of its schools are integrated to some degree; that there is now one high school comprised of 843 white and 643 black students; that there are now three junior high schools integrated in ratios running from 60–40 to 50–50; that four of the nine elementary schools are integrated in ratios similar to those just cited for the junior high schools; but that in the five remaining elementary schools,

three are over 90% black and two are over 90% white. Integration in these five schools is minimal because the location in the city is such that no conceivable zoning change would produce any substantially greater integration.

■ Regardless, however, of these salutary evidences of accomplishment, the possibility exists that even greater accomplishment might result from a further study of the situation in the light of Swann, and of Robinson and Davis. The cause will therefore be remanded to give the District Court opportunity for such consideration.

The plaintiffs have also appealed from the District Court's award of $5,000.00 attorney fees, contending that the award was too limited, both in amount and in the period for which the award was made. The defendant has cross-appealed, arguing that no award of counsel fees should have been made against them because they have not been "defiant, obstinate or unreasonably obdurate," that they have acted in good faith in complying with the orders of the Court, and that only once have they taken an appeal from the order of the District Court.

■ The plaintiffs are correct in asserting that counsel fees have traditionally been allowed to a prevailing party within the court's discretion in equity cases where such allowance has been necessary to provide full relief to the prevailing party. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 392, 90 S. Ct. 616, 24 L.Ed.2d 593 (1970). Counsel fees have been awarded in numerous civil rights cases: Lee v. Southern Home Sites Corp., 429 F.2d 290 (6th Cir. 1970), United States v. McLeod, 385 F. 2d 734 (5th Cir. 1967), Rolax v. Atlantic Coast Line R. Co., 186 F.2d 473, 481 (4th Cir. 1951), Dyer v. Love, 307 F. Supp. 974, 984–988 (N.D.Miss.1969), and in numerous school desegregation cases,[1] e. g.: Cato v. Parham, 403 F.2d

---

1. Some statutory schemes make provision for or even compel the award of attorney fees for the prevailing party. While the Civil Rights Act of 1964 provides for

12, 16 (8th Cir. 1968), Rolfe v. County Board of Education, 391 F.2d 77, 81 (6th Cir. 1968), Bradley v. School Board, 345 F.2d 310, 321 (4th Cir. 1963), Bell v. School Board of Powhatan, 321 F.2d 494, 500 (4th Cir. 1963), Pettaway v. County School Board, 230 F.Supp. 480, 487 (E.D.Va.1964); an award of over $40,000.00 was made in the most recent phase of the Richmond, Virginia case: Bradley v. School Board of Richmond, Virginia, 53 F.R.D. 28 (E.D.Va.1971).

The leading decision in this area appears to be Bradley v. School Board of Richmond, Virginia, 345 F.2d 310 (4th Cir. 1965), in which it was stated that an award of attorney fees is proper only in the extraordinary desegregation case, and only when it is found that bringing the action should have been unnecessary and was compelled by the school board's unreasonable, obdurate obstinacy. (345 F.2d at 321). The plaintiffs contend that the award should not have been limited as it was to the period of the time from the remand from the Supreme Court to the time of the issuance of this Court's most recent ruling in June, 1970.

In determining whether this Board's conduct was, as found by the District Court, unduly obstinate, we must consider the state of the law as it then existed. Prior to the decision of the Supreme Court in this case in 1968, the defendant had been operating the Jackson school system for several years with a free transfer provision which had been approved by the District Court and by this Court. This plan was not imper-

missible under the then generally accepted view of what duty was placed upon school boards to disestablish state-imposed segregation. See Robinson v. Shelby County Board of Education, 311 F.Supp. 97, 102 (W.D.Tenn.1970), Briggs v. Elliott, 132 F.Supp. 776 (E.D. S.C.1955), Bell v. School City of Gary, Indiana, 324 F.2d 209 (7th Cir. 1963), Deal v. Cincinnati Board of Education, 369 F.2d 55 (6th Cir. 1966). Thus we conclude the determination as to a lack of unreasonable obstinacy as to this earlier period to have been proper. However, we cannot say that the District Court's characterization of the Board's conduct after 1968 was clearly erroneous, and therefore will not disturb its conclusion that the Board's conduct during that subsequent period warrants the award of attorney fees. The Supreme Court had stated very clearly that free transfers in the Jackson school system were unconstitutional, and yet the Board resubmitted to the District Court a plan containing a free transfer provision, and then appealed the District Court's denial of that plan to this Court. As noted in the *Bradley* case, the question of whether the defendant has been guilty of unreasonable, obdurate obstinacy is for the district judge to determine. He has a wide discretion in this regard, and we find no abuse of this discretion either in his order for attorney fees, or in the determination of the amount thereof.

So much of the order of the District Court as provides for the allowance of attorney fees is affirmed, and the cause is otherwise remanded for further proceedings consistent herewith.

---

attorney fees in several places, (e. g.: cases filed to redress discrimination in public accommodations actions, 42 U.S.C. § 2000b) the section relating to public education, 42 U.S.C. § 2000c, does not. The Civil Rights Statute under which this suit was brought, 42 U.S.C. § 1983, does not provide for counsel fees, but does create liability " . . . in an action at law, suit in equity, or other proper proceeding for redress." This statute therefore neither creates nor changes

any rights with respect to attorney fees, apart from prevailing equitable principles. (See also 28 U.S.C. § 1343(4) which confers jurisdiction upon the District Courts over any civil action " . . . to secure equitable or other relief . . . ")) Such awards, therefore, are within and are a part of the historic equity jurisdiction of the Federal Court. Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).